No. 34,124

The National Cash Register Company, *Appellee* and *Cross-appellant*, v. W. G. Pfeifer, *Appellant* and *Cross-appellee*, et al.

(88 P. 2d 1032)

Opin-ion filed April 8, 1939.

*C. B. Skidmore*, of Columbus, for the appellant.

*Fred A. Walker*, of Columbus, and *Lawrence M. Walker*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

Allen, J.: This was a replevin action to recover a cash register. Plaintiff recovered judgment, and defendant appeals.

It appears that on December 12, 1936, one C. Frenn was engaged in the fish-market business in Pittsburg, Crawford county. On that date Frenn signed a written order addressed to the plaintiff at Dayton, Ohio, directing plaintiff to manufacture and ship to Frenn a cash register to be used in the fish-market business. The order was accepted by the company and the cash register in question was delivered to Frenn. The agreed price for the cash register was $195, of which amount $10 was paid in cash and the balance, $185, evidenced by a note, was to be paid in seventeen monthly installments. The order signed by Frenn and addressed to plaintiff provided that "the register shall remain your property until the price or any judgment is paid in full."

When the plaintiff received the order, which contained the terms and conditions of the proposed sale, accepted it and delivered the cash register to Frenn, there was a completed conditional sale of the register to Frenn. A copy of the conditional sale contract was duly filed and entered of record in the office of the register of deeds in Crawford county.

Thereafter Frenn removed his business and equipment, including the cash register, to Columbus, Cherokee county. In setting up his fish-market business in Columbus, Frenn rented from the defendant

Pfeifer a mercantile room in the east end of a building known as the Brooks Hotel building at an agreed rental of $15 per month, and at the same time Frenn engaged a room in the Brooks Hotel, for which he agreed to pay $15 per month. After operating his business at his new location for about three weeks Frenn was arrested on a criminal charge, and was confined in jail at Pittsburg. The girl who worked for Frenn delivered the key to the fish-market storeroom to the proprietor of a restaurant across the street. The defendant Pfeifer obtained the key from the restaurant proprietor. Frenn had possession of the equipment, including the cash register, until his arrest, and did not deliver possession of the cash register to the defendant.

Frenn was in default in his payments to plaintiff. Upon hearing of the arrest of Frenn, plaintiff's representative made demand upon Pfeifer for possession of the cash register. The defendant claimed Frenn owed him certain rent for the mercantile room and the hotel room, and refused to deliver possession of the cash register until such rent was paid. This action in replevin followed.

The case was tried before the court. Findings of fact as returned by the court are outlined above. The court found that the defendant Pfeifer detained and withheld the possession of the cash register from the plaintiff intentionally and without just cause or excuse. Judgment was entered in favor of the plaintiff for the return of the cash register, or in the event possession thereof could not be had, for $185, the balance due, and for $50 damages for wrongful detention and depreciation.

Defendant contends the plaintiff has no title or interest in the cash register in dispute, that "its lien, if any it had, was on an entirely different and distinct cash register, as shown by the abstract in this case." This argument seems to be based on the terms of the conditional sale contract which provided that the plaintiff would "manufacture and ship prepaid" a certain cash register, whereas the agent of plaintiff delivered the cash register in dispute shortly after the order was signed by Frenn. The defendant seems to entertain the view that because the plaintiff did not in fact manufacture and ship a cash register to Frenn in literal compliance with the order given, that he, the defendant, is justified in capturing and appropriating plaintiff's property. But since the cash register in suit was received by Frenn under the contract without question or dispute, it does not lie in the mouth of the defendant to question the transaction. He cannot claim under Frenn and in the same breath deny that Frenn had any right or title in the cash register. The point is not well taken.

Defendant further contends that plaintiff cannot recover and the judgment in his favor cannot stand because the plaintiff "sought to recover in this action as owner of the cash register in question and not upon the special ownership." He argues: "Our statute is plain; G. S. 1935, 61-502, provides that in a replevin action if the plaintiff claims the property by reason of any special ownership thereof, the same must be set out in the affidavit. This was not done, yet the court permitted appellee to introduce his bill of sale."

This contention seems to be based upon a misconception of a conditional sale contract. In *Sumner v. McFarlan*, 15 Kan. 600, the action was in replevin to recover possession of an organ, and the principal question was as to the title to the property. The syllabus states:

"Where property is delivered by the owner to a party seeking to purchase, upon the express agreement that no title shall pass until the price thereof is fully paid, and the price is not paid, the title does not pass; and such party cannot, by a sale to one ignorant of the terms of such contract, transfer a good title as against the original owner."

The court stated that there was no transfer of title, with a chattel mortgage back to secure the price, but simply a conditional sale with the condition unperformed.

The nature of a conditional sales contract again came before this court in *Hallowell v. Milne*, 16 Kan. 65. It was there held that where goods are sold at a fixed price to be paid thereafter, and delivery is made on the express condition that until the price is paid the title is to remain in the seller, payment is a condition precedent, and until made the property is not vested in the buyer.

In *Owens v. Hastings & Saxton*, 18 Kan. 446, upon the sale of railroad ties the contract specified that "the said ties shall not be considered the property" of the buyer "until placed under the rails." It was held that the stipulation as to the time of passing the title to the ties was valid, and that no creditor of the buyer with notice could acquire any title, by levy and sale on execution, as against the seller.

In *Hall v. Draper*, 20 Kan. 137, 140, upon the sale of an organ the agreement specified that the organ should remain the property of the seller until the price was paid. It was held that the sellers of the organ were the owners until the condition was performed. The court said:

"The title, and all the rights of control and possession flowing from title, were theirs, except as in terms restricted by the contract. The only limita-

tions upon their full control of the organ were those created by this instrument; and the only rights Leveridge had were those obtained by it. In this respect such a conditional sale differs from an absolute sale with a mortgage back. In such case the vendee has everything except as limited by the terms of the mortgage. Here he has nothing except as expressed in his contract."

Our statute, G. S. 1935, 58-314, provides that all instruments in writing or promissory notes evidencing the conditional sale of personal property, and which retain the title to the same in vendor until the purchase price is paid in full, shall be void as against an innocent purchaser, or the creditors of the vendee, unless the original instrument or a true copy thereof shall have been filed in the office of the register of deeds. That act took effect May 25, 1889. (*Plow Co. v. Witham*, 52 Kan. 185, 190, 34 Pac. 751.)

In *Manufacturing Co. v. Whetstone*, 63 Kan. 704, 705, 66 Pac. 989, a conditional sale of a cider press was under consideration. The court said:

"The contract expressly provided that the ownership of the machine was to remain in the seller until fully paid for, and, while possession was to be given to the buyer, it was plainly stipulated that until payment was made and title acquired by the buyer possession was to be held subject to the seller's order. The title, therefore, remained in the company, and all rights and control incident to title, except as expressly restricted by the contract itself, and, as we have seen, the only restriction as to possession was that it was to be held by the buyer at the option of the seller."

Where goods are sent by a wholesaler or manufacturer to a retailer for sale, the agreement may create an agency. (*Van Arsdale v. Peacock*, 90 Kan. 347, 133 Pac. 703.) Some sale agreements may raise a doubt whether a chattel mortgage or a conditional sale was intended. (*Christie v. Scott*, 77 Kan. 257, 94 Pac. 214; *Threshing Machine Co. v. Nash*, 103 Kan. 871, 176 Pac. 628.)

But we are clear the agreement before us was a conditional sale, and as the price had not been paid the title to the cash register was in the plaintiff. The sale contract having been duly filed for record, as required by the statute, the defendant had no claim on the cash register as against the plaintiff. Having title, the plaintiff could maintain replevin for possession of the cash register.

The plaintiff's claim for punitive damages was disallowed by the trial court, and plaintiff has brought a cross-appeal to review that judgment. We have examined the record and find no error in the action of the trial court on this question.

The facts found by the trial court are supported by the evidence, and the judgment must be affirmed. It is so ordered.