No. 32,962

Minerva Foster, *Appellee,* v. Samuel Foster, *Appellee,* and The Lewis Investment Company, *Appellant.*

(61 P. 2d 1350)

Opinion filed November 7, 1936.

*J. Glenn Logan* and *Ralph F. Glenn,* both of Topeka, for the appellant; *Dean C. Allard* and *William B. Bostain,* both of Kansas City, Mo., of counsel.

*B. J. Lempenau* and *W. E. Atchison,* both of Topeka, for the appellee.

The opinion of the court was delivered by

Smith, J.: This action was instituted as a divorce action. The phase of the case with which we are interested has to do with the title to, and right to possession of, an automobile. Judgment in the court below was in favor of the plaintiff in the divorce action, awarding her possession of the automobile. The defendant investment company appeals.

Samuel Foster was a hotel clerk. He was the husband of Minerva. She worked in an insurance office. An automobile had been purchased from a motor company in the name of Mr. Foster. The evidence is plain that it was used by both the husband and wife, just as most of the family cars in the country are used. The payments on the purchase-money mortgage were $33.68 a month. Minerva paid eleven of these. Samuel paid six. On May 8, 1935, only one payment remained to be paid.

On May 8, 1935, Samuel executed a mortgage to the Lewis Investment Company for $400. He told this company about the purchase-money mortgage, and the amount of the last payment

due the finance company on the purchase-money mortgage was paid to that company and the balance of the $400 was paid to Samuel. Minerva did not join in this mortgage. Shortly after the execution of this mortgage Samuel abandoned Minerva and left the automobile in front of the hotel. Minerva took possession of it. Soon after the execution of the mortgage an agent of the investment company called on Minerva and there is evidence that she told him that she would investigate the matter and determine what to do. Subsequently she consulted a lawyer, was advised that the car was exempt property and that the mortgage was void because she did not sign it with her husband. When the mortgage company demanded the car she refused to surrender possession of it.

On June 19, 1935, she drove the automobile downtown and parked it in front of a theater. While it was standing there the mortgage company took possession of it and drove it to Kansas City.

After some time Minerva sued Samuel for divorce. On her application the investment company was made a party defendant. She filed an amended petition in that case in which she claimed that the automobile belonged to her and was exempt property and that the mortgage was void. The investment company filed an answer in which it denied this and set up defenses of subrogation and estoppel. After granting the divorce to Mrs. Foster the trial court tried the issue as to the validity of the mortgage between Mrs. Foster and the investment company. The result was a judgment holding that the automobile was exempt and the mortgage void. The judgment further provided that the investment company was subrogated under the purchase-money mortgage in the amount of $33.68 and gave it a lien on the automobile for that amount. From that judgment this appeal is taken.

There is no doubt but that Minerva did not sign the mortgage in question. Since she did not sign it, if it be held that the automobile was exempt property, the mortgage was void and the judgment of the trial court was correct. We must then determine whether the automobile was exempt property.

The subject is dealt with in R. S. 60-3504. That section provides for the following exemptions to the head of a family under two subdivisions. They are as follows:

"*Sixth:* . . . also one wagon, cart or dray . . .

"*Eighth:* The necessary tools and implements of any mechanic, miner or

other person, used and kept in stock for the purpose of carrying on his trade or business, . . ."

We will consider first whether an automobile is a wagon as the word is used in the above section. We must take note of the fact that the means of locomotion in the country is changing with the changing times. The time when our people went about their affairs in a spring wagon, a top buggy, a lumber wagon, or even a surrey with the top adorned with tassels, has about passed.

This court considered this question in *Printz v. Shepard*, 128 Kan. 210, 276 Pac. 811. There it is said, quoting from *Dowd v. Heuson*, 122 Kan. 278, 252 Pac. 260:

" 'In construing exemption statutes, a number of courts have held an automobile is a "carriage" and exempt as such (*Parker v. Sweet*, 60 Tex. Civ. App. 10, 127 S. W. 881; *Peevehouse v. Smith* [Tex. Civ. App.] 152 S. W. 1196); that it is exempt as a wagon "or other vehicle" under the Iowa statute (*Lames v. Armstrong*, 162 Ia. 327, 49 L. R. A., n. s., 691); and even in our own case of *Wickham v. Bank*, 95 Kan. 657, 149 Pac. 433, this court more than ten years ago took notice of the fact that the automobile was rapidly and certainly superseding the "wagon" which was specifically exempted from seizure on execution under the statute of 1868.' " (p. 211.)

In 123 A. S. R. 143 the cases on this subject are collated. In a note there it is said:

"The word 'wagon,' as used in exemption statutes, is given a liberal interpretation and made to embrace many vehicles that do not come within the strict definition of the term. It should, to quote from *Rodgers v. Ferguson*, 32 Tex. 533, 'be construed in its popular and most general sense, and should include all four-wheel vehicles, whether covered, or placed on springs, and for whatever use they may be employed, whether for the transportation of property or persons. The intention of the legislature was to protect all laboring citizens in the pursuit of their occupations, and a correct construction of the law would seem to protect the drayman and cartman in the possession of their vehicles, although they do not come within the strict definition of the word 'wagon.' "

In *McMullen v. Shields*, 96 Mont. 191, 29 P. 2d 652, it was held that a "Model A" Ford was included in the word "wagon" as used in the exemption statutes. See, also, *People v. Corder*, 82 Colo. 318, 259 Pac. 613; also, *Patten v. Sturgeon*, 214 Fed. 65; also, *Stichter v. Southwest Nat. Bank*, (Tex. Civ. App.) 258 S. W. 223.

There is another statute which is of some guidance to us here. That is R. S. 22-511. It reads as follows:

"When any man residing in the state of Kansas shall die, leaving a widow and minor children, or either, there shall, at the time of the making of the inventory and appraisement of his personal estate as provided by law, be

selected and set apart for the use and benefit of said widow and minor children an allowance out of said estate as follows, to wit:

"(1) The family library, pictures and musical instruments; the wearing apparel of the deceased; the household goods, implements, furniture and utensils of every kind and nature owned by the deceased and used in his home at the time of his death; one buggy and buggy harness, one driving horse or team, one cow and one automobile."

It will be noted that the last item in the above section is "automobile." The earlier statutes relating to widows' exemptions did not list the specific property that was exempt, but referred to the property that was exempt to the husband during his lifetime. The section was amended by chapter 186 of the Laws of 1917. The specific property was set out in that chapter. The word "wagon" does not appear, while, as noted, the word "automobile" does. Evidently the legislature intended to give the widow the same exemptions the law gave to the husband and head of the family under the general exemption statutes. We have concluded, therefore, that the word "wagon" as used in R. S. 60-3504 must be construed as also covering automobile. Since this is true the automobile in the present case was exempt property and the mortgage was void. This conclusion might very well dispose of this case. However, there is another question that will be discussed. The eighth subdivision of R. S. 60-3504 provides that the necessary tools and implements of any mechanic, miner or other person used or kept in stock for the purpose of carrying on his trade or business shall be exempt.

We will consider whether the automobile in question is exempt under that section.

In *Printz v. Shepard*, supra, this court held:

"An automobile when used as an implement by a farmer in conducting his farming operations is exempt from levy or execution under the provisions of R. S. 60-3504."

In the case of *Dowd v. Heuson*, supra, this court said:

"But the words 'necessary tools and implements' used by the head of a family for the purpose of carrying on his trade or business is a broader and more all-inclusive term than the 'wagon' or like term used in our own and other exemption statutes; and this court has already said that there is no difficulty in concluding that an automobile may be exempt as a necessary implement used in carrying on the business of a grain dealer. (*Wickham v. Bank,* supra.) In *Beach v. Fireovid,* 84 Kan. 357, 360, 114 Pac. 206, this court noted but was not asked to review the correctness of a trial court's ruling that an automobile was exempt from execution because it was used by the plaintiff in his business as a physician. Other instructive cases are: *Wilhite v. Williams,* 41 Kan. 288, 21 Pac. 256; *William v. Vincent,* 70 Kan. 595, 79 Pac. 121; *Bank*

*v. Venard,* 109 Kan. 15; 18, 197 Pac. 877; and see, also, the cases cited in *Federal Agency Investment Co. v. Baker,* supra, just decided.

"The fact that plaintiff did not make any profit over and above maintenance on the use of his car in his business as foreman is immaterial. Neither is the fact that plaintiff's wife used the car for her convenience or pleasure on Sundays and at other times. Probably no case can be found which would hold that the occasional loan or use of a tool or implement for some purpose unrelated to its owner's trade or business would destroy its otherwise exempt character as a necessary instrumentality in the proper conduct of its owner's trade or business." (p. 281.)

In the case of *Wilhite v. Williams,* 41 Kan. 288, 21 Pac. 256, this court held that the horse, harness and buggy of an insurance agent were exempt. The court said:

"The language employed in that clause is general, and evidently the legislature did not intend to restrict the exemption to persons pursuing any particular occupation, or those making any particular use of the property therein mentioned or to any particular class of debtors . . ." (p. 291.)

See, also, 94 A. L. R. 293, 299, where the authorities are collected. There we find the case of *Julius v. Druckrey,* 214 Wis. 643, 254 N. W. 358, 94 A. L. R. 293. The debtor in that case had injured his foot and it was necessary for him to have transportation in order to reach his work. The Wisconsin statute on exemption provided as follows:

"Two · cows, ten swine, fifty chickens, one yoke of oxen and one horse or mule, or in lieu of one yoke of oxen and a horse or mule, two horses or two mules, or any automobile used or kept for the purpose of carrying on the debtors' trade or business," etc.

The court held that the automobile was exempt because it was necessary for him to use the car for transportation from his home to his work and back. The headnotes in 94 A. L. R. 293 on that case read as follows:

"An automobile used by a debtor in going to and returning from his place of work may be found to be 'used or kept for the purpose of carrying on the debtor's trade or business' within the meaning of a statute exempting from seizure on execution any automobile so used.

"An automobile need not be absolutely indispensable to one's work, but only reasonably essential, to be exempt from seizure on execution under a statutory exemption of an automobile 'used or kept for the purpose of carrying on the debtor's trade or business.'

"An automobile used by a laborer in going to and returning from his place of work may be found to be used for purposes of business within a statute exempting an automobile so used from seizure on execution, where an injury to the debtor's foot makes walking difficult and painful, though he is able to walk if forced to do so, and he is financially unable to hire others to transport him."

In this case the husband was a hotel clerk. He resided several blocks from the hotel. He often worked late at night after the street cars had stopped running. There was evidence that he had been injured so that it was necessary that he have some means of transportation. It is not necessary in order for the automobile to be exempt that it should be absolutely indispensable to the workman. It is sufficient if it is reasonably necessary to him in carrying on his work. The hotel clerk could not hold his job unless he arrived there to start work and he could not exist unless he had a place to rest at night. We will not hold that he was bound to hire a taxi, take a streetcar, or walk. To do so would be flying in the face of what we know the practice of the people to be. We hold that the automobile was exempt properly under subdivision eight.

Appellant makes the point that there was evidence that Minerva used the car and urges that since she could not be head of the family this evidence was inadmissible. We will not be drawn into a situation where we must say who is head of a family. Under certain circumstances either a husband or wife may be. (See *Harrison v. Foster*, 94 Kan. 284, 146 Pac. 355.) There is ample evidence in this case that the automobile in question belonged to both Minerva and Sam and the court so found.

Appellant urges that Minerva was estopped from denying the validity of the mortgage because she permitted her husband to have the car in his name. This point is not good. Husbands and wives cannot govern their business relations with the same meticulous care that strangers observe. Besides, there was evidence that before the investment company made the loan, their agent called the company that held the purchase-money mortgage and was told that Minerva had an interest in the car.

Finally appellant urges that since the judgment required the appellee to pay into court the amount of the payment that was made to the holder of the purchase-money mortgage it is entitled to possession of the car. Just why this should be true does not appear. What the court was looking after was to make sure that Minerva paid what money was used from the money secured by the loan with which we are to clear the title of the automobile in question. Appellant has no complaint about this.

The judgment of the district court is affirmed.