No. 35,431

Hess-Harrington, Inc., *Appellant*, v. State Exchange Bank of Yates Center, *Appellee*.

(122 P. 2d 739)

Opin-
ion filed March 7, 1942.

De W. H. M. Stiles, of Iola, argued the cause, and Guy Lamer, of Iola, was
on the briefs for the appellant.

E. E. Lamb argued the cause, and W. E. Hogueland, of Yates Center, was on
the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action in replevin to recover possession
of a Buick automobile, and from a judgment denying it relief the
plaintiff appeals. In our consideration of the appeal we shall refer
to plaintiff as the corporation, to the defendant as the bank, to the
automobile as the car, and to each of the several chattel mortgages
as mortgage.

Before stating the issues disclosed by the pleadings, we note the
following facts which either were alleged in the pleadings or shown
by the evidence, and which are not in dispute.

The corporation was engaged in business in Kansas City, Mo.,
loaning money on automobiles. On April 4, 1939, one H. S. Mon-
crieff, who was not made a party to the action, and who was then
a resident of Kansas City, Mo., purchased the car, and to provide
funds for its purchase executed and delivered to the corporation his
promissory note secured by a mortgage on the car. This mortgage
was duly filed in the office of the recorder of Jackson county, Mis-
souri, on April 6, 1939. This mortgage described Moncrieff as a
resident of Jackson county, Missouri, and it contained, among
others, the usual provisions that if default be made in payment
or if the mortgagor removed the property from the county, or if the
mortgagee deemed itself insecure, the mortgagee might take the
property into its possession.

In August, 1939, Moncrieff moved to Yates Center, in Woodson
county, Kansas, where he became engaged in the retail shoe busi-
ness. On June 3, 1940, he applied to the bank for a loan on his
car, representing it was free of encumbrance. The bank searched
the records of Woodson county, and finding no mortgages against
the car, made Moncrieff a loan secured by a mortgage on the car,
the mortgage being duly filed in the office of the register of deeds
of Woodson county on June 18, 1940.

About October 4, 1940, Moncrieff was in arrears to the corpora-
tion and at its request he went to Kansas City and on that date

executed a new note for the balance then due, and a new mortgage in which he was described as a resident of Woodson county, Kansas. This mortgage was duly filed in Woodson county on November 9, 1940. When the new note and mortgage were delivered, the old note was not canceled or delivered to Moncrieff and the old mortgage was not released of record.

None of the above notes and mortgages was signed by Mrs. Moncrieff. At some date not fixed in the testimony as abstracted, Moncrieff, accompanied by his wife, drove the car to the bank and informed its cashier he could not pay his note and he wanted to leave the car to take care of the mortgage to the bank. At that time he turned over the key to the car and the bank took the car to a garage.

Such other facts as are necessary to note are referred to later.

On February 18, 1941, the corporation commenced its action against the bank, the petition alleging execution, delivery and filing of the mortgage made to it by Moncrieff on April 4, 1939, default thereon and by reason of its special ownership, it was entitled to possession; that the bank had taken and was in possession of the car under some claim, the exact nature of which was not known to the corporation, but any such claim was inferior to the right and claim of the corporation. The prayer was for recovery of possession of the car.

So far as need be noticed the bank's answer alleged the corporation knew that in August, 1939, Moncrieff became a resident of Woodson county, Kansas, and that thereafter Moncrieff paid the corporation money on its mortgage; that the corporation never filed its mortgage in Woodson county and abandoned it on October 4, 1940, when it took its mortgage of that date which was filed in Woodson county on November 9, 1940. The bank further alleged the delivery to it of its mortgage of June 3, 1940; that Moncrieff and his wife delivered the car to the bank for the purpose of securing the debt and the bank held the car as mortgagee in possession. The bank further alleged that if the corporation had any lien upon the car it was inferior to the bank's lien; that the mortgage to the corporation of October 4, 1940, was void, as the car was exempt property and the mortgage was not signed by the wife; that when Moncrieff and his wife delivered the car to the bank they waived their exemption right and the bank's mortgage was a valid and subsisting lien. It prayed that its mortgage be declared a first lien.

The corporation's reply, among other things, alleged that its mortgage was a purchase-price mortgage; admitted that Moncrieff moved to and became a resident of Woodson county, and that its mortgage was never filed in Woodson county. It denied it was guilty of laches or that it was under any duty to file its mortgage in Woodson county. It also alleged delivery of the mortgage to it of October 4, 1940, but denied it had abandoned its original mortgage, alleged that the debt secured by it had never been satisfied and it had never surrendered or released the original note and mortgage, and that the same was a valid and subsisting first lien. It prayed for judgment as prayed for in its petition.

The trial was by the court which made findings of fact on which it rendered judgment in favor of the bank. The statements of fact hereinbefore noted comprise a part of the trial court's findings. In addition the trial court made three findings to which the corporation objects. One is that the copy of the mortgage filed in Jackson county, Missouri, was not an exact copy of the original. It does not affirmatively appear the judgment was based on this finding. We have examined the original mortgage and the copy filed as shown in the abstract, and while the copy is not exact (the statute says "true," G. S. 1935, 58-301) the differences pertain to matter other than the body of the mortgage creating the lien. Without further comment, we think under our decision in *Bank v. Brecheisen*, 65 Kan. 807, 70 Pac. 895, the copy as filed was sufficient to constitute notice. The second objection is that a finding the corporation consented to Moncrieff's bringing the car to Woodson county is unsupported by the testimony. The president of the corporation testified Moncrieff had sent in checks from Yates Center for some five to seven months before the corporation took its new mortgage on October 4, 1940, and on the latter date Moncrieff was in arrears from three to five months. He also stated he knew that Moncrieff was living in Yates Center when the last mortgage was made. At no place in his testimony, as abstracted, does he say he did not know that Moncrieff was living in and engaged in business in Yates Center. His only statement was that Moncrieff was living in Kansas City, Mo., when the first mortgage was given. We think it may fairly be inferred from the testimony that the corporation, through its president, knew that Moncrieff was living in Yates Center for some months prior to October 4, 1940, and that by its failure to

object to the car being in Woodson county or to take steps to protect itself under its mortgage, that it consented thereto.

The third objection is that the trial court erred in finding Moncrieff obtained a certificate of title for his car from the vehicle commissioner of Kansas on February 3, 1940. It may be said the proof a certificate was obtained is scant. The matter of whether a certificate was obtained is not important here. The attempt to get the certificate does show, however, the car was being kept in Woodson county on the last-mentioned date.

The appeal presents two questions of prime importance. The first is, on the removal of the mortgaged property from Missouri, where the mortgage was filed, to Kansas, where it was not, did priority of the corporation's lien persist, or when it consented to such removal and did not file its mortgage in the appropriate county in Kansas, could a subsequent mortgage in good faith obtain priority? The second question is whether the bank's mortgage constituted a valid lien.

Our statutes with respect to chattel mortgages contain no provision for a refiling of a chattel mortgage on property removed by the mortgagor. Without regard to certain exceptions not here important, our statute provides that every such mortgage shall be void against subsequent mortgagees in good faith, unless the mortgage or a true copy thereof be deposited in the office of the register of deeds of the county where the mortgagor resides (G. S. 1935, 58-301). The laws of Missouri are not pleaded nor proved. Assuming the law of that state is the same as ours, the original mortgage, being filed in the county of the mortgagor's residence, was notice of the lien secured thereby.

The general rule is that where a chattel mortgage has been properly filed and thereby priority of lien is preserved, upon the removal of the mortgaged property to another state it is not necessary in order to preserve the lien that the mortgage be filed in the state to which removal has been made. That general rule has been followed in Kansas. See *Handley v. Harris*, 48 Kan. 606, 29 Pac. 1145, and *National Bank v. Massey*, 48 Kan. 762, 30 Pac. 124. But there is a well-recognized exception to that rule and that is it is not applicable if the mortgagee knows of or consents to the removal. Not all courts give the same reason for applying the exception. In *Moore v. Keystone Driller Co.*, 30 Ida. 220, 163 Pac. 1114, L. R. A. 1917 D, 940, it was said that when a local state recognizes as a valid lien

a mortgage given in a sister state on property then there, and which was afterwards removed to the local state, there had been accorded to the sister state the full measure of courtesy contemplated by the rule of comity, and to go further and hold the rule applies where the removal was done with the mortgagee's consent, and that the mortgage need not be filed locally, but that an innocent purchaser (or subsequent mortgagee) is chargeable with notice which the mortgagee could, and in good conscience should, have given him, is beyond the spirit of the rule and in violation of the rights of the citizens of the local state. As bearing on the question of lien on property removed from one state to another, see 11 C. J. 529; 14 C. J. S. 758; 10 Am. Jur. 777; and note 57 A. L. R. 702, 711 *et seq.* We think that the reasoning of the Idaho court is sound. It clearly appears here that the corporation had it within its power to protect itself. It could have enforced its lien promptly when the property was removed from Missouri, it could have enforced it when default was made in the note, or it could have filed its mortgage in Woodson county. It did none of these things. After Moncrieff had lived in Yates Center from August, 1939, to June, 1940, he applied to the bank for a loan on the car, representing it to be clear of encumbrance; the bank investigated the records and apparently that representation was true. It then made the loan. We think no rule of comity now compels any conclusion that plaintiff's original lien should be held prior to that of the bank, if the bank's lien is good, and we therefore take up the corporation's contention the car was exempt property, the mortgage was not signed by the wife, and therefore the mortgage of the bank is void.

Let it be conceded for the purpose of discussion that the corporation may raise the question and that the car was exempt property (G. S. 1935, 60-3504; *Foster v. Foster,* 144 Kan. 528, 61 P. 2d 1350). The statute with reference to chattel mortgages on exempt property declares it unlawful to create any lien by chattel mortgage, *"without the joint consent of both husband and wife."* (G. S. 1935, 58-312.) It does not in words require the wife to sign mortgages on the husband's exempt property.

Our constitutional provision with respect to homesteads prohibits alienation "without the joint consent of husband and wife" (Const., art. 15, sec. 9) and the exemption provision of the code of civil procedure uses identical language (G. S. 1935, 60-3501). In *Matney v. Linn,* 59 Kan. 613, 54 Pac. 668, it was held that while there must be

a joint consent of the husband and wife to the alienation, the written consent of the one not vested with the legal title was not absolutely essential, and that valid joint consent could be shown by testimony. If that be the rule as to the homestead, certainly no harsher test should be here applied. The record here shows nothing as to whether Mrs. Moncrieff did or did not consent to the mortgage to the bank at the time it was given. It does show that she was present and consented to the car being delivered to the bank in satisfaction of the debt. If need be the doctrine of relation back might be applied, but we think it may be inferred that she consented to the transaction in all its parts.

We need not devote much time or space to the second mortgage to the corporation. It was inferior to the mortgage to the bank, and under the pleadings the corporation placed its right of recovery expressly on its first mortgage and not on its second one.

It has not been made to appear the trial court erred and its judgment is affirmed.

HOCH, J., not participating.