HINTON *v.* BOND DISCOUNT COMPANY.

4-8753                                    218 S. W. 2d 75

Opinion delivered February 28, 1949.

Rehearing denied March 28, 1949.

*John C. Finley, Jr.,* and *Shaver, Stewart & Jones,* for appellant.

*Cecil E. Johnson, Jr.,* for appellee.

HOLT, J.   December 5, 1944, John M. Eads and wife borrowed $145,—evidenced by their note,—from Time Auto Loan Company of Harris county, Texas, as purchase money for a Studebaker coach automobile, and as security, executed a chattel mortgage on the car to the

lenders. This mortgage was not recorded. March 9, 1945, this note and mortgage were assigned to appellee, Bond Discount Company.

Thereafter, on January 15, 1945, appellee, Bond Discount Company, made an additional loan to Eads and wife in Texas for $669.60, taking another chattel mortgage on this same car. This mortgage also was not recorded.

On February 1, 1945, Ethel Eads applied for and received a ''Certificate of Title to a Motor Vehicle'' from the Texas State Highway Department as provided by the laws of that State. This certificate contained a description of the car, that it was purchased from L. D. Jones Motor Company, Nashville, Texas, that the owner was Ethel Eads, Houston, Texas, that the automobile was subject to a first mortgage lien in the amount of $669.60, in favor of appellee, Bond Discount Company, Houston, and that there were no other liens against said car. No mention was made of the first mortgage, *supra*.

Thereafter, Eads and wife, without the knowledge or consent of appellee, removed the car to Texarkana, Arkansas, and sold it. Appellant, Smith, bought the car from J. L. Ripley. Neither knew that the car had been mortgaged in Texas and were not aware of the Certificate of Title held by Ethel Eads. Appellant, Smith, later sold the car to appellant, Hinton, who was in possession of the car at the time suit was filed, and at trial.

The present suit was instituted by the ''Bond Discount Company, a Corporation.'' It alleged in its complaint that it was a corporation, that it owned the notes and mortgages, that there was due on said notes and mortgages $729.80, that Hinton had possession of the car, and that its value was $750. It prayed that its mortgages be given full faith and credit, for the appointment of a receiver, for the sale of the car, and in the event of a deficiency, for judgment against appellants for conversion.

Appellants, in separate answers, interposed general denials and appellant, Hinton, by way of cross complaint,

prayed that in the event Bond Discount Company should prevail that he "have and recover judgment herein against the defendant," W. C. Smith, in the amount of $734.96, purchase price of the car, and for money expended in repairs.

In short, Bond Discount Company sought foreclosure of its mortgage liens. Appellants defended primarily on the ground that they were *bona fide* purchasers and that there were no liens against the automobile in question enforcible in Arkansas.

The decree contained the following recitals: "That the defendants, Ervin Hinton and W. C. Smith, are jointly and severally indebted to plaintiff in the sum of six hundred thirteen and eighty/100 dollars ($613.80) by reason of the conversion of one 1940 Studebaker automobile having Motor No. 600336, the property of plaintiff.

"The complaint of the plaintiff as to additional items claimed is denied.

"It is further decreed that should defendant, Ervin Hinton, discharge or pay to plaintiff the judgment here rendered then he shall have judgment against his co-defendant, W. C. Smith, for the full amount required to discharge plaintiff's demand.

"It is therefore considered, ordered, adjudged and decreed that plaintiff have and recover of and from the defendants, Ervin Hinton and W. C. Smith, either jointly or severally, the sum of six hundred thirteen and eighty/100 dollars ($613.80) and all costs of this action, and if same be not paid within 30 days, execution shall issue therefor together with all costs of this action. It is further ordered that should Ervin Hinton, defendant, pay or discharge this decree then and in such event he shall have judgment against his co-defendant, W. C. Smith, for the full sum required to discharge this decree."

Appellants appear on direct appeal, and appellee prosecutes a cross appeal from that part of the court's decree denying it recovery of $116 alleged due on the assignment to it of the first mortgage, *supra*.

For reversal, appellants first argue that appellee sued as "Bond Discount Company, a corporation" when in fact it was a partnership and therefore not a proper party plaintiff to institute this suit. This contention is untenable for the reason that in their answers appellants interposed only general denials. They made no specific denial that the status of appellee was that of a partnership and not a corporation as alleged in the appellee's complaint. The effect of their failure to make specific denial, under our statutes, was to admit the corporate status of appellee, as alleged. Arkansas Stats. (1947), § 27-1121, in part provides: " . . . that any allegation of complaint or other pleadings setting out the status of any party or parties as a corporation, partnership, firm or individual shall be taken as admitted unless specifically denied."

There was no issue of fact on this point before the trial court. "Objection that plaintiffs did not have the legal capacity to sue must be made either by demurrer or answer, and, in the absence of proper objection, will be waived." (Headnote 1), *Scottish Union & National Insurance Company* v. *Wilson,* 183 Ark. 860, 39 S. W. 2d 303.

"The broad, uncontroverted rule is that the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy." *St. Louis-San Francisco Railway Company* v. *Cox,* 171 Ark. 103, 283. S. W. 31.

Next appellants say: "We contend that said certificate (the Texas Certificate of Title) was inadmissible in evidence in this case. The cause of action alleged in the complaint was predicated upon liens claimed under two mortgages alleged to have been recorded in Harris county. The certificate recited that there was a $669.60 lien on the automobile, but this recital is not legal evidence in this case. It does not prove that there existed two recorded mortgages under which liens can be enforced; and unless the foreign mortgages are in fact

recorded our courts will not give them full faith and credit."

The evidence shows that both mortgages here were unrecorded in Texas, but as above noted, February 1, 1945, Ethel Eads received a "Certificate of Title to a Motor Vehicle from the Texas State Highway Department" which contained a description of the car involved and stated that it was subject to a first lien in the sum of $669.60 in favor of Bond Discount Company and that there were no other liens. This Certificate of Title to the car in question was obtained and was in accordance with the provisions of Texas Statutes in Vol. 3, Vernon's Annotated Code of the State of Texas, Cumulative Annual Pocket Part, 1946, P. C. Art. 1436, entitled "Motor Vehicle: Certificate of Title Act." This Act specifically repealed all prior registration statutes pertaining to chattel mortgages and, in effect, gave the holder of this Certificate of Title a valid, enforcible lien which took the place of a chattel mortgage. In fact, the Texas courts have held that this Texas Act dispenses with the recording of all registration statutes pertaining to chattel mortgages on automobiles. *Commercial Credit Co., Inc.*, v. *American Mfg. Co., et al.*, 155 S. W. 2d 834, and *Hill* v. *Wolfe, et al.*, 184 S. W. 2d 489. Appellee having acquired the second note and mortgage in question by assignment, under the rule of comity prevailing in this State, had the right to enforce his lien in Arkansas even as against an innocent holder.

In *Nelson* v. *Forbes & Sons*, 164 Ark. 460, 261 S. W. 910, (Headnote 3), this court held: "MORTGAGES— REMOVAL OF MORTGAGED CHATTEL TO THIS STATE.—A chattel mortgage, executed and valid in another State, and properly recorded there, will be enforced in Arkansas on removal to this State, even against an innocent purchaser."

We think, however, that the trial court correctly denied appellee's right to enforce its alleged lien on the first mortgage, *supra,* for the reason that the preponderance of the evidence shows that there had been no com-

pliance with the provisions of the Texas Certificate of Title Act, *supra*.

Appellants also argue that the Texas Statute is penal in effect and cannot be enforced here under the well established doctrine that "the courts of no country execute the penal laws of another." We cannot agree. We think it obvious, in the circumstances here, that the Texas Statute, *supra*, had for its primary purpose the affording of a remedy for the enforcement of a private right.

The Supreme Court of the United States in the case of *Huntington* v. *Attrill*, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123, held: (Headnote 2) "The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act," and (Headnote 4), "Whether a statute of one State is a penal law which cannot be enforced in another State is to be determined by the court which is called upon to enforce it," and in the body of the opinion, the court said: "Penal laws, strictly and properly, are those imposing punishment for an offense committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

Appellants have argued, with considerable force, that since the comity rule is based primarily on reciprocity and since if the situation here were reversed and an Arkansas lien holder were seeking to enforce his lien in a Texas court, as against an innocent holder there, Texas would not enforce the claim, therefore, we should not enforce a Texas lien here.

We have never made this distinction in any of our opinions, but as pointed out above, we have uniformly enforced here chattel mortgages, when executed, valid, and recorded in another State, against property removed to this State, even as against an innocent person.

We think, however, there was error in so much of the court's decree that there had been a conversion of the car in question by appellants, and awarding a personal judgment against them for any deficiency that might remain on the sale of the car. This action was brought to foreclose a mortgage lien on a specific car, in the possession of appellants. There is no element of conversion present. Accordingly, the decree is affirmed on appellee's cross appeal, and that part of the decree foreclosing appellee's lien, under its second mortgage, *supra,* against the automobile in question is also affirmed, but that part of the decree, awarding an in per- *sonam* judgment against appellants for any deficiency, is reversed and the cause remanded with directions to enter a decree consistent with this opinion.