CHETOPA STATE BANK *v.* MANES.

4-9946                                                     255 S. W. 2d 957

Opinion delivered March 16, 1953.

---

*J. L. Bittle,* for appellant.

*G. P. Houston* and *Gordon Armitage,* for appellee.

ED. F. McFADDIN, Justice.  Appellant, Chetopa State Bank, of Chetopa, Kansas (hereinafter called ''Bank'') filed this action in replevin to repossess a Chevrolet Coupe from appellee, Manes.[1]  From a jury verdict and judgment for Manes, the Bank prosecutes this appeal.

On April 3, 1950, M. M. Weaver and Wanda Weaver, his wife, were residents of Chetopa, Kansas.  They obtained a loan from the Bank for $743.50, secured by a chattel mortgage on the Chevrolet Coupe here involved. The mortgage was duly filed and recorded in the County Clerk's Office, as required by the Kansas law.[2]  The latter part of April or early May, 1950, the Weavers

---

[1] M. M. Weaver and Wanda Weaver were made defendants and summoned constructively.  Their whereabouts are unknown and their connection with the case appears in this opinion.

[2] Sec. 58-301 *et seq.* of the General Statutes of Kansas of 1949.

786

secretly drove away from Kansas in the Chevrolet Coupe, and did not return. In late May, 1950, the Weavers were in Arkansas, and sold the Chevrolet Coupe to Frank Carder, an automobile dealer in Searcy, Arkansas, and exhibited and surrendered to him a Kansas Certificate of Title to the car, showing no lien claim of any kind.[3]

Carder sold the Chevrolet Coupe to Barger, who had the car registered under the Arkansas Title Certificate Law (Act 142 of 1949) and obtained an Arkansas Title Certificate which showed no liens on the car. Barger then sold the Chevrolet Coupe to the Appellee, Manes, who had the title transferred to himself and holds an Arkansas Title Certificate, dated July 20, 1951, showing a clear title.

As aforesaid, the Circuit Court trial resulted in a Jury verdict for Manes, because the Trial Court, over the Bank's general and specific objections and exceptions, instructed the Jury:

". . . You are further instructed that the law of the State of Arkansas provides that one who holds a lien against an automobile in the form of a vendors lien or chattel mortgage or conditional sales contract or other lien shall file and register such lien with the State Revenue Department of the State of Arkansas, and that if and when such lien holder does file his evidence of his lien or claim against the automobile with the Revenue Department from that time on, notice to everybody that such lien exists, and the law further provides that if such lien or claim is not filed with the State Revenue Department that it is not

[3] The Kansas Statute on Certificate of Title of Automobiles is Sec. 8-135 of the General Statutes of Kansas of 1949. In studying this case we have examined the following cases from Kansas. *Sorensen* v. *Pagenkopf*, 151 Kans. 913, 101 Pac. 2d 928; *Hess-Harrington* v. *State Exchange Bank*, 155 Kans. 118, 122 Pac. 2d 739; *Citizens State Bank* v. *Farmers Union*, 165 Kans. 96, 193 Pac. 2d 636; *General Motors Acceptance Corp.* v. *Davis*, 169 Kans. 220, 218 Pac. 2d 181, 18 A. L. R. 2d 808; *Peabody State Bank* v. *Hedinger*, 170 Kans. 237, 224 Pac. 2d 1014; *Rauh* v. *Dumler*, 170 Kans. 698, 228 Pac. 2d 694; see, also, Case Note on p. 273 of Feb. 1951 issue of the *Journal of the Bar Association of Kansas*. Our opinion herein is predicated on the statement contained in the appellant's brief, and uncontradicted by the appellee, to the effect that the recording of the mortgage in Kansas fully established the Bank's lien, and that the Bank was not required to have the Title Certificate show the existence of the chattel mortgage.

notice to third persons dealing with reference to such automobile. So, gentlemen, if you find from a preponderance of the evidence in this case that the plaintiff does hold a valid unpaid chattel mortgage against this automobile and that there is an unpaid balance of some amount on said indebtedness then you will find for the plaintiff for the possession of said automobile or for the balance due on the indebtedness unless you further find from a preponderance of the evidence that the plaintiff has not and did not file evidence of his claim or lien with the Revenue Department of the State of Arkansas. *In the event you find from a preponderance of the evidence the plaintiff did not file evidence of its indebtedness with the State Revenue Department and that this automobile was purchased by the defendant without such evidence having been filed with the Revenue Department by the plaintiff, then you will find that the defendant was an innocent purchaser of the automobile and that the lien of plaintiff is not binding upon him.''*

We have italicized the concluding portion of the Instruction to call attention to the fact that it was in effect a peremptory instruction for the defendant, since there was no claim that the Bank had ever filed evidence of its Certificate of Indebtedness with the Revenue Department of Arkansas.

It is asserted by Plaintiff and not denied by Defendant that the filing of the mortgage in Kansas perfected the Bank's lien, and that the Bank's mortgage was good in Kansas, even against an innocent purchaser. We held in *Nelson* v. *Forbes & Sons,* 164 Ark. 460, 261 S. W. 910, and reaffirmed in *Hinton* v. *Bond Discount Co.,* 214 Ark. 718, 218 S. W. 2d 75,[4] that ''a chattel mortgage, executed and valid in another State, and properly recorded there, will be enforced in Arkansas on removal to this State, even against an innocent purchaser.'' So

---

[4] Another case in which *lex loci contractus* was applied is that of *Pruitt Truck & Implement Co.* v. *Ferguson,* 216 Ark. 848, 227 S. W. 2d 944. We there said: "The Arkansas law of Conflict of Laws necessarily recognizes the validity of foreign-created titles in chattels brought into this State, and under our law not even a sale to a *bona fide* purchaser here will cut off such a prior legal title."

the Bank in the case at bar contends that it is entitled to recover the car against Manes.

But Manes relies on Act 142 of 1949, which is the Arkansas Motor Vehicle Registration and Certificate of Title Act, and claims that such Act became effective after *Hinton* v. *Bond Discount Co., supra,* and changed the rule of law stated in that case. Manes claims that the provisions of Act 142 of 1949 are mandatory; that the Bank was required to have the foreign vehicle registered in this State to perfect its lien; and that Manes is entitled to prevail because he purchased the car in reliance on an Arkansas Title Certificate which showed no lien.

We are thus brought squarely to the question, whether a prior lien on a motor vehicle good in the State where the parties lived and the transaction occurred, is superior to an after acquired title when the car is brought into Arkansas and a Title Certificate obtained from the Revenue Department of this State which shows no lien. We have never decided the precise question, since Act 142 of 1949 is a comparatively recent statute, but Courts of other States have decided cases involving somewhat similar questions; and there is a diversity of holdings.[5]

The leading case on one side is that from the Supreme Court of Florida in *Lee* v. *Bank of Georgia,* 159 Fla. 481, 32 So. 2d 7, 13 A. L. R. 2d 1306, in which it was held that a prior mortgage duly recorded in Georgia, and covering an automobile, was *inferior* to the after acquired title in Florida, when the purchaser relied on a title certificate issued by the Florida Motor Vehicle Commission.

The leading cases on the other side are from Arizona, Ohio, and North Carolina. The Supreme Court of Arizona, in *Ragner* v. *General Motors Acceptance Corp.,* 66 Ariz. 157, 185 Pac. 2d 525, held that a prior chattel

---

[5] In 13 A. L. R. 2d 1338, there is an Annotation entitled: "Effect of local statute requiring filing or recordation of lien on automobiles; certificate of title acts"; and other cases are collected in the said Annotation.

mortgage on an automobile, duly recorded in Texas and Louisiana, was *superior* to a title subsequently acquired in Arizona, in reliance on a title certificate issued by the Arizona Highway Department and showing no liens. The Court of Appeals of Ohio, in *Associates Discounts Corp.* v. *Colonial Finance Co.,* 88 Ohio App. 205, 98 N. E. 2d 848, reached the same conclusion on the law as did the Arizona Court. A result in accord with the Arizona holding was also reached by the Supreme Court of North Carolina in the case of *Friendly Finance Corp* v. *Quinn,* 232 N. C. 407, 61 S. E. 2d 192. Likewise, a result in accordance with the Arizona holding was reached by the California Court of Appeals in *Atha* v. *Bockius,* 232 Pac. 2d 312.[6]

We feel constrained to follow the holdings from Arizona, Ohio, and North Carolina, as previously mentioned, and the references to those cases dispense with reiterating all the reasons for our holding. It is clear that the purpose of our Certificate of Title Act (Act 142 of 1949) was to protect the owners of automobiles against fraud. If evidence of title has been procured through fraud and deception, the title of the subsequent innocent holder for value, which arose therefrom, can have no greater solemnity than the source from which it sprang. If Instruction No. 1, as given by the Court in this case, should be declared to be the law, then the purpose of Act 142 of 1949 would not be to protect the owner of the automobile against fraud, but to allow a title certificate to have the effect of a negotiable instrument.[7] The very purpose of said Act 142 would be overridden and it would protect a title acquired through misrepresentation and fraud, and leave the rightful owner empty handed.[8]

---

[6] Even though there was an issue of subrogation in the California case which led to a remanding of the cause, nevertheless the holding on the priority of the earlier out-of-state lien was in accord with the Arizona holding.

[7] In *Blaylock* v. *Herrington,* 219 Ark. 939, 245 S. W. 2d 576, we held that a title certificate was not a negotiable instrument.

[8] We have borrowed language from the Ohio Court in making the above statements.

Accordingly, we hold that Manes' title certificate issued by the State of Arkansas was not in itself sufficient to overcome the Kansas mortgage relied on by the appellant Bank; and the Instruction given by the Trial Court and previously copied was erroneous; and for that reason the judgment is reversed and the cause is remanded.

In view of the possibility of another trial, we think it only fair to state further facts reflected by the record so that our holding here will not foreclose other issues that were in the case. The facts showed that when Weaver and wife obtained the $743.50 from the Bank, they mortgaged not only the Chevrolet Coupe here involved, but also a Chevrolet pick-up truck; and that the Bank repossessed the mortgaged truck, sold it, and applied the proceeds on the Bank's note and thereby reduced the balance to $71.50; that Carder contacted the Bank and was advised that the balance due on the Chevrolet Coupe was only $71.50; that Carder did not pay this amount, since he relied on the Kansas Title Certificate which Weaver had, showing no lien; that later the Bank admitted that another party had a mortgage on the pick-up truck claimed to be superior to the Bank's mortgage; that the Bank paid $400 to satisfy such outstanding mortgage on the pick-up truck, and added the $400 and interest to the $71.50 balance, which had been previously quoted to Carder; and that the Bank delayed some time before filing the replevin suit and then claimed a lien on the Chevrolet Coupe for an amount in excess of $471.50. Thus, besides the question of the Arkansas Title Certificate herein decided, there are other questions in this case; i.e., (a) whether the Bank acted with due diligence and is entitled to full relief; or (b) should be estopped to claim more than the $71.50 which it represented to Carder; or (c) should be estopped for failure to hold the Kansas Title Certificate, rather than trust it to the Weavers. The effect of these facts and others is not decided in this opinion, as it is confined to the error of the Court in giving the Instruction previously copied.

Reversed and remanded.

The Chief Justice not participating.