No. 34,678

LOUIS A. TRAPANI, *Appellee*, v. UNIVERSAL CREDIT COMPANY,
*Appellant*.

(100 P. 2d 735.)

Opinion
filed April 6, 1940.

*Douglas Hudson, Howard Hudson, Douglas Hudson, Jr.,* all of Fort Scott, and *Harry B. Jenkins,* of Kansas City, Mo., for the appellant.

*Harry W. Fisher* and *Harry W. Royer,* both of Fort Scott, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for the conversion of an automobile. Judgment was for the plaintiff. Defendant appeals.

The petition alleged that on or about March 17, 1938, plaintiff was the owner of and had in his possession a Lincoln-Zephyr automobile of the value of $1,500; that on that date the defendant took the car from him by fraud and converted it to its own use; that in addition to the loss of the automobile the plaintiff had been damaged in the sum of $1,000. Judgment was asked in the amount of $2,500.

For its answer, the defendant denied that it unlawfully took the automobile from the use of plaintiff; denied that it was of the value of $1,000 and denied that the plaintiff had been damaged in any amount. The answer further stated that at the times referred to in plaintiff's petition defendant was the lawful owner of the automobile and was entitled to the exclusive possession of it. The answer further stated that it was the owner and holder of a conditional-sales contract executed by one Hainline to the Palmer Motor Company on Lincoln-Zephyr automobile No. 32792, dated April 27, 1937; that on the 28th day of April, 1937, before maturity, for valuable consideration, and in the regular course of business, this contract was sold to defendant; that about the 4th day of May, 1937, this contract was duly filed with the register of deeds of Miami county; that under the terms of the contract title was vested in defendant until the final payment of $1,142.95; that this sum had not been paid, and on or about the month of March, 1939, this automobile was repossessed by defendant under the terms of its contract, and defendant was lawfully entitled to possession of it. The answer then alleged that plaintiff wrongfully executed a chattel mortgage on the automobile in question, which was negotiated to the Morris Plan Company of Kansas City; that this mortgage was dated February 9, 1938, on the same automobile, and was made payable to the Palmer Motor Company, who endorsed it over to the Morris Plan Company, who claimed to be the owner of it; that on or about the 15th day of June, 1938, the Morris Plan Company, alleging a default in the chattel mortgage, filed a suit in conversion against this defendant, wherein as a mortgagee the Morris Plan Company sued for the possession of the automobile, or its value, which suit was pending and undetermined. The answer next alleged that under the terms of the contract between this plaintiff and the Morris Plan Company this plaintiff had no interest in the automobile; that if any interest accrued to plaintiff by reason of his alleged purchase as an innocent purchaser, then such interest

had been assigned to the Morris Plan Company by reason of the chattel mortgage. Judgment was asked in favor of defendant and against plaintiff.

With the issues thus made up the case was submitted to the trial court without a jury. That court made findings of fact and conclusions of law. These were to the effect that on April 27, 1937, the Palmer Motor Company pretended to sell the car in question to Herbert Hainline, who was an employee of the Palmer Company; that the deal was made by Hainline paying $324 to a Kansas City company as a down payment, and delivering the conditional-sales contract to the Universal Credit Company and obtaining a further sum of $1,142.95, which was paid to the Kansas City company as a balance. The court further found as follows:

"The sale was actually made to Palmer Motor Company, and Herbert C. Hainline never did have any interest in said Lincoln-Zephyr automobile, four-door sedan, H-32792. . . . The Universal Credit Company knew that Palmer Motor Company was actually taking the car for sale and that Herbert C. Hainline never did own said automobile or have any interest in it."

The court then found in effect that the car was kept for weeks on display by the Palmer Company at its show rooms and was sold to plaintiff on February 15, 1938, for $1,318, part of which was paid by trading in a Ford coupé and the balance by a note for $868.75 to the Morris Plan Company of Kansas City. The Palmer Company received the $868.75, but did not pay the Universal Company the balance which it owed on account of the transaction when Hainline bought the car for the Palmer Company and the conditional-sales contract was assigned to that company. The court further found that the Palmer Company at no time said anything to plaintiff about defendant having any claim on the car in question and all the representations made to him suggested the Palmer Company was the full owner. The court further found that under the conditional-sales contract the Palmer Company was seller and Hainline was buyer and the Universal Credit Company financed the deal, but the sale was actually made to the Palmer Company and nine monthly payments of $50 each were made on the contract of that company. "The entire transaction was just as if the Palmer Motor Company had bought the Lincoln-Zephyr car from Universal Credit Company, given its note in payment and a conditional-sales contract or chattel mortgage on the car to secure the balance due." The court next found that on May 4, 1937, at 8:20 a. m. a copy of

the conditional-sales contract was filed in the office of the register of deeds at Paola, and that this copy showed the motor number to be "37292," when in fact the true motor number was "32792," and that the rest of the description corresponded with that of the car in this case. The court noted that the first question to be determined was whether the recording of this conditional-sales contract containing a different motor number than the motor number on the car in question would be constructive notice to plaintiff of the lien claimed. The court next found that the only difference in Lincoln-Zephyr four-door sedans, "H," manufactured in 1937, was the difference in the motor number of each machine. The court next found that the Universal Credit Company knew that the car was obtained by the Palmer Motor Company for the purpose of selling it; that agents of defendant inspected it from time to time and knew it was out on demonstration trips to prospective purchasers and the defendant gave its consent that the Palmer Company should sell the car in the regular course of trade; and that this would have been entirely satisfactory to defendant had the Palmer Company paid the balance due when the car was sold to plaintiff. The court next found that defendant about March 17, 1938, took the car from plaintiff without any right, drove it to Kansas City, and converted it to its own use. The court further found that plaintiff gave as a balance of the purchase price his note for $820.25, which was secured by the mortgage on the car, which was sold to the Morris Plan Company of Kansas City, Mo., and that it was contended by the defendant that this note and mortgage was not enforceable against the plaintiff. The court further found that because defendant had taken the car and converted it to its own use the plaintiff had been damaged in the sum of $1,814.70. This amount was itemized as follows:

"(a) Value of the new Lincoln-Zephyr car, March 17, 1938, including one payment of $48.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,350.00

"(b) Loss of use of car for 124 days at $2 per day. This damage found as the difference between owning and operating the car and hiring a car in its place . . . . . . . . . . . . . . . . . . . . . . . . . Ω. . . . 248.00

"(c) Interest at six percent on $1,350.00 for 17 months, from March 17, 1938, to August 17, 1939 . . . . . . . . . . . . . . . . . . . . . . . . 114.75

"(d) Actual money paid out by plaintiff in his effort to recover his car in a suit in Kansas City, Mo. The items were, court costs, $53.30; premium on replevin bond, $25; depositions taken by plaintiff, $14.85; copies of said depositions, $6.30; photostatic copies of exhibits, $2.50; total . . . . . . . . . . . . . . . . . 101.95"

The court made the conclusions of law as follows:

"CONCLUSIONS OF LAW

"1. The defendant, the Universal Credit Company, wrongfully took the new Lincoln-Zephyr car from the possession of the plaintiff and converted it to its full use and benefit.

"2. The conditional-sales contract filed in the register of deeds' office on May 4, 1937, was not sufficient, in fact or in law, to charge the plaintiff with constructive notice of any lien on or claim against the new 1937 Lincoln-Zephyr, four-door sedan, H-32792, which plaintiff purchased from the Palmer Motor Company on February 15, 1938.

"3. The plaintiff, Louis A. Trapani, was in law a bona fide purchaser for value, without notice of any defect in the title or lien against the new Lincoln-Zephyr car, H-32792, when and at the time he did actually purchase said automobile from the Palmer Motor Company on February 15, 1938.

"4. Where a sale of an automobile is made to a person or firm engaged in the business of buying and selling automobiles, the rights of a purchaser from such a retailer or dealer, in the ordinary course of trade, are superior to the rights of one selling automobiles to such retailer or dealer; and in fact the Palmer Motor Company was a retailer and dealer in automobiles and in law made a sale as such to one who bought in good faith. A condition that the title shall remain in the seller or the mortgagee, the Universal Credit Company in this case, until the price is paid is ineffectual as against a bona fide purchaser from the retailer, the Palmer Motor Company in this case, in the ordinary course of trade. The conditional vendor or mortgagee is estopped to deny the validity of such a sale, or question the right of the mortgagor to sell in such a case."

Judgment was given for plaintiff in the amount of $1,814.70. Motion for a new trial was made by the defendant and denied by the trial court. The defendant moved to strike certain findings and make additional findings. This motion was overruled except that the court had found that plaintiff gave his note and mortgage for $868.75 to the Morris Plan Company of Kansas City and the court changed that so as to state that plaintiff gave his note to the Palmer Company and the Palmer Company sold it to the Morris Plan Company, and also the trial court struck from its findings a reference to the liability of the plaintiff to the Morris Plan Company on this note. The defendant then filed a motion for permission to amend its amended answer so as to show that when plaintiff in this case brought his action in replevin, entitled *Louis A. Trapani v. Universal Credit Company et al.*, defendants, No. 458343, in the circuit court of Jackson county, Missouri, he elected the remedy of replevin and cannot thereafter change such election and seek to litigate the same matters in this action for alleged conversion. This motion was overruled.

The first argument of the defendant, which we shall consider, is that the description in the conditional-sales contract, which was on record with the register of deeds of Miami county at the time the plaintiff bought the car, contains a sufficient description to put plaintiff on notice of the claim which defendant had on this particular car, and that he bought the car subject to the lien of the Universal Credit Company. In this connection it should be noted that the difference in the description was in the transposition of one digit of the number so that one examining the record in the register of deeds' office would notice that car No. 37292 had a lien on it and if he examined the number of the car in question he would notice that it was No. 32792, and it should also be noticed that the trial court found that such was the only difference there would be between two 1937 Lincoln-Zephyr four-door sedans. The argument of defendant is that plaintiff should have known that the Palmer Company only had one car of this description and that had plaintiff examined the record he would have discovered that the car of this general description had been bought by the Palmer Company and would thereby have been put on guard. To sustain its contention defendant cites authorities where this court has held that a description that would put a buyer on his guard to investigate the matter was sufficient to put him on notice as to a lien. The authorities relied on refer in most cases to descriptions of horses, mules, and cattle or chattels of that general description. With the transactions in automobiles occurring as frequently as they do at the present time this court must take notice of the fact that there is very little difference between two new automobiles of the same style and make other than the number, and the security of the buying public makes it necessary that a, stricter rule be applied. Note 42 C. J. 759, which states the rule as follows:

"The fact that some part of a description is erroneous will not render it insufficient, where the vehicle is otherwise so designated as to be capable of identification. But a mortgage failing to give the true number of the car or engine, and giving an erroneous one, is not sufficient to put a purchaser on inquiry, where no other means of identifying the vehicle are given, and the description of a four-passenger automobile of a certain make and number as a five-passenger automobile of the same make, but a different number, is not such similarity as to be notice to third persons that the same car was intended."

Note, also, *First Mortgage Loan Co. v. Durfee,* 193 Ia. 1142, 188 N. W. 777. The number of the car in this case was not missing. It was the wrong number. The situation was certain to mislead

prospective buyers. We hold that the copy of the contract on record in the office of the register of deeds was not constructive notice to plaintiff of the lien held by defendant.

Defendant next argues that under the facts in this case under the conditional-sales contract the Palmer Motor Company never had any title to the Lincoln-Zephyr automobile and therefore could not pass any title to plaintiff. In connection with this argument it should be noted that the findings of the court show that the Universal Credit Company knew that the Palmer Company was buying the car for the purpose of resale. Its agents knew it was being demonstrated and knew that the Palmer Company bought it for no other purpose than to sell it. Under such circumstances it would not do to hold that the Palmer Company did not have sufficient title in this car to pass title to a purchaser in good faith. To do so would open the door to fraud. The case of *National Cash Register Co. v. Pfeifer*, 149 Kan. 582, 88 P. 2d 1032, is relied upon by defendant in this connection. However, that was a case where the conditional-sales contract was for an article not to be resold in the regular course of trade and was properly on record and there was no mistake as to the description. In Estrich on Installment Sales, sec. 151, the rule is laid down as follows:

"Where there is a sale of property in which the seller reserves title, but expressly or impliedly authorizes a resale, it seems clear that the seller has no rights as against the purchaser from the conditional buyer who purchased in accordance with the authority to sell. Nor does there seem to be any necessity for insisting upon the condition that the subsequent purchaser be a bona fide purchaser. Where, however, the seller has not authorized a resale, but has entrusted the goods to a dealer in such goods, or has laid down certain conditions in the sale, it may be necessary to condition the purchaser's superior rights upon his being a bona fide purchaser. Authority to sell may be implied, as well as express. The broad proposition has been announced that the seller of property cannot, as against subsequent purchasers, reserve his title and authorize his vendee to sell; his authorization of a sale by his vendee is inconsistent with the reservation of title in himself; accordingly, a purchaser from the vendee has a good title as against the conditional seller. Where the sale is to a retailer or dealer in the articles sold, the rights of a purchaser from such retailer or dealer in the ordinary course of trade are superior to those of the seller; as to such purchasers from the retailer the reservation is invalid. Or, as expressed in some cases, the seller is estopped to claim the goods as against such a purchaser from the retailer." (p. 290.)

See, also, *O'Loughlin v. Jennings Co., Inc.*, 107 Conn. 365, 140 Atl. 758. There the court said:

"Where an article is sold to a retail dealer for the apparent purpose of resale, a condition that the title shall remain in the seller until the price is paid is ineffectual as against a bona fide purchaser from the retailer in the ordinary course of trade. 24 R. C. L. 458; 35 Cyc. 680; 1 Williston on Sales, § 329. The conditional vendor is held to be estopped to deny the validity of a sale by one to whom he has given the apparent power to sell." (p. 368.)

Defendant next argues that the note taken by the Palmer Company from Trapani could not have been enforced against Trapani by the Palmer Company and contained provisions which rendered it nonnegotiable—hence Trapani can defend against a claim by the Morris Plan Company—hence the effect of the trial court's decision is to give Trapani $1,350 for his 1936 Ford. It is hard to see how this argument can avail defendant in this case. The only question we have here is whether defendant unlawfully took the car from plaintiff and converted it to its own use and the amount the plaintiff was damaged thereby.

· Defendant next argues that it was an abuse of discretion for the court to refuse to permit it to amend its amended answer so as to show the replevin suit in Jackson county, Missouri, and that this action constitutes an election of the remedy of replevin. The question of whether or not amendment of pleadings before or after judgment should be permitted in furtherance of justice and on such terms as may be proper under G. S. 1935, 60-759, is largely addressed to the discretion of the trial court. In this case it appears that the defendant knew of the action in Missouri at the time it filed its amended answer upon which the trial was had. It had ample opportunity to plead this defense had it seen fit to do so at that time. Under such circumstances it would hardly be an abuse of discretion to refuse such an amendment after judgment.

The next point argued by defendant is that the judgment is contrary to the evidence. This argument requires an examination of the items in the paragraph of the findings of fact that has been quoted herein. Item (a), the value of the car, is fixed at $1,350. The trial court stated that this included $48.50, which was the amount of the one payment plaintiff had made. There was testimony by various parties as to the value of the car on the date when it was converted. Some placed it as low as $750. The plaintiff testified that its reasonable value was $1,300. The trial court was the trier of the facts and had the duty of finding the value of the car from all the testimony and all the surrounding facts and circumstances. In view

of the above testimony, we cannot say there was no evidence to support a finding, that the value of the car was $1,300 on the day it was taken.

The item of $48.50, which the trial court added to the $1,300, was no part of the value of this car. The fact that he had made one payment or half a dozen payments had no bearing on this question. The car might have been given to him and he still would have a right to recover its value in damages for its conversion. We conclude, therefore, that the item of $1,350 for the value of the car was erroneous and this figure could not have been higher than $1,300 under the evidence.

The next item we must consider is the finding that plaintiff was entitled to $248 for loss of the use of the car for 124 days at the rate of two dollars a day. We must consider this item along with the next one of $114.75 interest at six percent on $1,350 for seventeen months from the date when the car was converted until this action was commenced.

The plaintiff testified that he was without a car for 124 days and during that time he needed a car and had to hire one in his business. The figure of two dollars a day is what the court found was the additional expense between the plaintiff's having a car of his own and being compelled to hire one. The evidence is not clear on this point and it is difficult to gather just what plaintiff lost on account of having to hire a car. Plaintiff cites and relies on what this court held in *Sansone v. Studebaker Corporation,* 106 Kan. 279, 187 Pac. 673. That was a case where the evidence was clear as to what damages plaintiff had suffered on account of being deprived of the use of his car and it was clear that it was necessary for him to have such damages in order that he be completely indemnified. We have no such case as that here, however. We hold that the general rule should apply and that the allowance of the item for loss of the use of the car was erroneous.

As to the item for interest, this is a proper element of damages in actions for conversion. (See *Meek v. Railroad Co.,* 95 Kan. 111, 147 Pac. 112, and cases cited; also, 65 C. J. 141.) The only thing wrong about this item is that it is calculated on $1,350 when it should have been calculated on $1,300.

The next item is the allowance of $101.95 to cover the expense of plaintiff in maintaining the replevin action in Jackson county, Missouri. These expenses were not recoverable by plaintiff. (See *Jones*

*v. Stanley,* 27 Ariz. 381, 233 Pac. 598; also, *Ward v. Huff,* 94 N. J. Law. 81, 109 A. 287.)

The conclusion we have reached on these items does not require a reversal of the judgment, since the difference in the amount is a matter of calculation.

It is the order of this court, therefore, that if plaintiff shall file with the clerk of this court within ten days of the date of the filing of this opinion a consent to remit the difference between the amount of the judgment allowed him by the trial court and the amount it would have been if calculated according to what has been said in this opinion, the judgment will be affirmed, otherwise it is reversed with directions to proceed with a new trial.