No. 34,710

MICHAEL SORENSEN and EMIL SORENSEN, Copartners as THE
CAPITOL SECURITIES COMPANY, *Appellees*, v. H. A. PAGENKOPF,
*Appellant;* THE FIRST NATIONAL BANK OF HERINGTON and
ALICE M. SCHAAF, *Defendants.*

(101 P. 2d 928)

Opinion
filed May 4, 1940.

*Matt Guilfoyle, Thornton D. Scott,* both of Abilene, and *Keene Saxon,* of
Topeka, for the appellant.

*Paul H. Royer,* of Abilene, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to replevin a Ford automobile.
Judgment was for the plaintiffs. Defendant appeals.

The petition alleged that plaintiffs were a copartnership and en-
gaged in the business of financing the buying of automobiles; that
about the 3d day of April, 1939, Alice M. Schaaf made her note in
writing to the Lydick Motor Service, a copartnership composed of
Paul Schimming and W. H. Schaaf; that this note was assigned to
plaintiffs on April 4, 1939, and that plaintiffs were the holders of
it; that to secure payment on the note on April 3, 1939, the maker,
Alice M. Schaaf, gave a chattel mortgage to the Lydick Motor

Service covering the 1939 Ford automobile in question; that the mortgage stated that the note and mortgage were given as a part of the purchase price of the automobile; that the mortgage was assigned in writing to the plaintiffs and was duly recorded with the register of deeds on April 6, 1939, and that defendant Pagenkopf claimed to be the owner of the automobile by virtue of a title he acquired after the recording of plaintiffs' mortgage; and that the First National Bank of Herington claimed to have an interest in it by virtue of a mortgage given to them by H. A. Pagenkopf, dated May 27, 1939, and filed June 14, 1939; that any interest either one of these defendants might have was junior to the rights of these plaintiffs; that plaintiffs were entitled to immediate possession of the car and they deemed themselves insecure and had elected to take possession of the automobile which was in the possession of H. A. Pagenkopf, who had refused to deliver possession of it to plaintiffs upon demand; that the value of the automobile was about $550. Judgment was asked for possession of the automobile or judgment in that amount.

Pagenkopf answered that during the times mentioned the Lydick Motor Service operated an automobile garage and sales agency and had the agency for the sale of Ford automobiles in their vicinity and that these facts were well known to the plaintiffs; that about May 24, 1939, he purchased the automobile in question and paid for it by delivering his old automobile of the value of $520 and by paying the balance thereof, partly in cash and partly by execution of a note and chattel mortgage upon the new car; that he received from the automobile agency the title certificate, as required by the laws of the state of Kansas, and this title certificate showed the automobile to be free and clear of any liens. The defendant further alleged that Alice M. Schaaf was not the owner of the car and was not in possession of it at the time the purported chattel mortgage was claimed to have been executed by her to the plaintiffs; that no title was ever made to Alice M. Schaaf and no certificate of title was ever transferred by her to these plaintiffs, as required by the laws of the state of Kansas, and that by reason of the foregoing the purported chattel mortgage claimed to have been executed to these plaintiffs by Alice M. Schaaf was fraudulent and void as to this defendant; that the defendant further alleged that the Lydick Motor Service made some payments to the plaintiffs upon the note sued upon in plaintiffs' petition, but that the exact amounts of these

payments were unknown to defendant. The answer further alleged that defendant was informed and believed that the plaintiffs operating as an automobile finance company had made it a practice to finance new cars for the Lydick Motor Service and left new cars with the Lydick Motor Service for sale; that they knew and understood that the Lydick Motor Service was engaged in business as dealers in automobiles and engaged particularly in the advertising and sale of new and used Ford cars and that plaintiffs knew that the car herein sued upon was being advertised and offered for sale to the general public by the Lydick Motor Service and that by reason thereof said plaintiffs made the Lydick Motor Service their agent for the purpose of selling it, and by reason thereof the plaintiffs should now be estopped from claiming any lien on this car as against this defendant. The First National Bank answered, setting forth that Pagenkopf on May 27, 1939, executed a mortgage to them on the automobile in question, which they filed for record on June 14, 1939.

For reply, the plaintiffs alleged that the note and mortgage made by Alice M. Schaaf to the motor company and assigned to them was a retail sales chattel mortgage, and that upon the representations made by Alice M. Schaaf and the Lydick Motor Service, as shown in the note and chattel mortgage, they believed and relied on the allegations in the paper and purchased the retail chattel mortgage in good faith; that this chattel mortgage was not a floor-plan mortgage and that neither this plaintiff nor its agent ever agreed or knew that the automobile was to be kept on the floor for sale, but believing and relying upon the representations made in the note and mortgage to them, understood that Alice M. Schaaf was purchasing this car and had given the note and mortgage in controversy as a part of the payment.

A jury was waived and the case tried by the court. The trial court did not make any findings of fact, but found the issues generally for the plaintiffs and gave them judgment for $459.30 and ordered that if this judgment was not paid the plaintiffs would be awarded possession of the automobile. Motion for a new trial was filed and overruled.

There was very little dispute about the facts. For the purpose of the conclusion we have reached it may be stated there was no dispute. The car in question was a new one and plaintiffs knew of this or should have known of it from the purchaser's statement

when they made the loan to Mrs. Schaaf. Mrs. Schaaf was the wife of one of the partners and an employee of the Lydick Motor Service. The plaintiffs knew this or should have known it from the purchaser's statement. The chattel mortgage upon which plaintiffs are relying in this case was placed on record in Dickinson county on April 6, 1939. This mortgage was on record on May 24, 1939, when defendant Pagenkopf bought the car from the motor company and on May 27 when the bank took the mortgage which Pagenkopf had given it to secure the purchase price. Pagenkopf did not know of any mortgage or lien being on the car when he bought it. All parties admit that he has acted in good faith at all times. The motor company was in possession of the car at the time the note, mortgage and purchaser's statement of Mrs. Schaaf were made and when the car was sold to Pagenkopf.

The theory upon which the trial court decided the case was that the papers that were sent to the plaintiffs recognized that the car had been sold by the motor company, the real owner, to Mrs. Schaaf, and that the plaintiffs had a right to depend on this in making the loan. Although the trial court did not say so in its written opinion, it undoubtedly made the fact that the mortgage of plaintiffs was on file when Pagenkopf bought the car, a decisive factor in the case. The court said:

"This is one of the cases where because of the fraud [of] a third party one of two innocent parties must suffer. . . . The rule with reference to the sale of property left by the mortgagee at a place of business where such property is kept for sale I don't think applies in this case."

The trial court and all the parties admit the correctness of the rule that—

"Where a mortgagee knows the mortgagor is a dealer, buying to sell in the regular course of business, and consents to a sale by the mortgagor, the purchaser takes free from the mortgagee's lien." (*Emerson-Brantingham Implement Co. v. Faulkner*, 119 Kan. 807, syl. ¶ 2.)

(See, also, *Trapani v. Universal Credit Co.*, ante, p. 715, 100 P. 2d 735.)

The plaintiffs argue that the rule does not apply here because there is no evidence that the finance company in this case knew that the car in question was to be kept in stock by the plaintiffs and finally sold by them. The trial court adopted this view.

We shall consider the case just as if there were no such evidence. We have seen that the plaintiffs knew that Mrs. Schaaf was an employee of the motor company and the wife of one of the partners

of that company. The plaintiffs were in the business of buying chattel mortgages on automobiles. This is a business that has come into being within the last two or three decades and has certain well-established practices. One of them is that employees of automobile agencies take the legal title to a car and make the mortgage to a finance company, just as was done in this case, while the employee never does have possession of the car. On account of the business in which plaintiffs were engaged they were bound to know about this practice in the automobile financing business. Knowing about this practice, What was their duty in a case such as we have here where the mortgage they bought was made by an employee of the mortgagee and the wife of one of the partners of the mortgagee? On account of the fraud of a third party, one of two innocent parties must suffer. Is it not better that the party whose negligence made the fraud possible should suffer? When the mortgage was offered to plaintiffs the facts already noted should have caused them to investigate. Had they done this they would have learned that the car upon which the mortgage was given was going to be offered for sale in the regular course of business. They could then have gone ahead and bought the mortgage, not depending on whether or not they had confidence in the company, which really had possession of the car. On the other hand, when Pagenkopf entered the place of business of the motor company he had a right to expect that the company, which was offering the car for sale, had a good title to it. If out of an excess of caution Pagenkopf had gone to the records of the register of deeds in Dickinson county he would have looked to see if a car owned by the Lydick Motor Service was mortgaged, and would have found none was. In order for the filing of the mortgage in this case to have constituted any notice to him it would have been necessary for him to have examined the record not only as to every employee of the company, but also as to every other mortgage of record. It would never occur to any ordinary person to do such a thing.

In *Gump Investment Co. v. Jackson,* 142 Va. 190, 128 S. E. 506, the court considered a similar situation. There that court said:

"One conclusion is that some duty, at least, rests upon an individual, corporate or otherwise, who finances a retail dealer, to see to it that cars upon which he has a lien are not left under the domain and control of such dealer on his salesroom floor, to be offered to the public. The business of the Gump Investment Company was to finance retail automobile dealers, and it did finance them for a profit. It assumed some risk both as to the moral and

financial standing of every dealer it financed. It took a risk as to the hazard for a profit. This is the status of the Gump Investment Company in this case.

"Another conclusion is that a person going into the place of business of a retail automobile dealer, and purchasing a new car commingled with the stock for sale, from the showroom, of such dealer, without any actual knowledge that there is a lien upon such car, and who pays the full purchase price, and to whom the car is delivered, is ordinarily under no obligation to examine the records to ascertain whether there is a lien upon such car." (p. 195.)

The above language is persuasive here. It seems the better public policy to put the burden on the party who is in the business of financing automobiles for profit rather than on the member of the public who does business with one he has a right to believe is a reputable firm.

The case of *Guaranty Discount Corp. v. Bowers,* 94 Ind. App. 373, 158 N. E. 231, deals with this question. That court said:

"It is equally well settled that where the owner of a chattel, after he has sold it to one person, wrongfully sells and delivers it to another, the first purchaser is estopped to question the second purchaser's right to the property if the second transaction was made possible by reason of the fraud or negligence of the person to whom the first sale was made." (p. 376.)

It is true that the court in that case saw fit to hold for the last purchaser of the car because the finance company neglected to require the motor company to comply with the certificate of title law, but the case is of interest to us because it holds that neglect on the part of the finance company, which makes possible the loss, makes the finance company the one which should bear the loss.

The defendant Pagenkopf refers to the chapter of our statutes known as the certificate of title law. This statute was passed in 1937. The section with which we are interested is G. S. 1939 Supp. 8-135. The section is a long one and covers several phases of the transfer of title to automobiles. The portions with which we are interested are as follows:

"Dealers shall execute upon delivery to the purchaser of every vehicle, a bill of sale stating the lien or encumbrances thereon, in accordance with form prescribed by the commissioner for all vehicles sold by them. Upon the presentation to the commissioner or his authorized agents of a bill of sale executed in the form prescribed, by a manufacturer or dealer for a new vehicle, sold in this state, a certificate of title shall be issued in accordance with the provisions of this act: . . . On or after July 1, 1937, it shall be unlawful for any person to operate in this state a motor vehicle, trailer or semitrailer registered under the provisions of this act or to transfer his title to a vehicle, trailer or semitrailer to any person or dealer, unless a certificate of title shall have

been issued as herein provided. In the event of a sale or transfer of ownership of a vehicle, trailer or semitrailer for which a certificate of title has been issued, the holder of such certificate of title shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, as prescribed by the commissioner and the transferror must deliver the same to the buyer at the time of delivery to him of said vehicle. . . . (6) On and after July 1, 1937, it shall be unlawful for any person to buy or sell in this state, any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

It is admitted by all parties that no bill of sale was executed by the Lydick Company to Mrs. Schaaf when the purported sale was made to her, as is required in the first paragraph quoted above. Hence no certificate of title was issued to her.

It will be noted that the second paragraph quoted above made it unlawful to transfer title to a vehicle to any person unless a certificate of title had been issued. The paragraph quoted also provided that in the event of the sale of a vehicle the holder of the certificate of title should endorse on it an assignment. The third paragraph made it unlawful to buy or sell any vehicle unless at the time of delivery there should pass a certificate of title with the assignment of it.

The defendant argues that since the above provisions were not complied with when the mortgage to plaintiffs was made such mortgage was void. He cites *Morris v. Firemen's Ins. Co.,* 121 Kan. 482, 247 Pac. 852. In that case a farmer had bought a new car from a stranger. He insured the car against theft. The car was stolen. The law at that time made it unlawful for any person to buy an automobile from anybody except a regular dealer having an established place of business unless the seller was identified by two acquaintances of the buyer and unless he obtained from the seller a bill of sale, reciting a description of the car, signed by the identifying witnesses. It was admitted that compliance was not had with this statute. When the farmer endeavored to collect from the insurance company on his policy that company raised the point that on account of this noncompliance the sale to the farmer was void and that he did not have an insurable interest in the car. This court remarked that the purpose for which the statute was enacted was to minimize the possibility of owners having their cars stolen and held that the noncompliance with the statute did make the sale void.

The statutes we are considering were clearly enacted to make it more difficult for a thief to dispose of a stolen car. But this was not the only purpose of the statute. A man in the position of Pagenkopf, who would be deprived of his car through the fraudulent machinations of a dealer, is just as unfortunate as the man who has his car stolen from his garage. He really can guard against the thief better than he can the dealer. These statutes were enacted to protect the public from one as much as from the other.

Without passing on the question of whether the mortgage of Mrs. Schaaf to plaintiffs was void, we have no trouble in reaching the conclusion that the failure of plaintiffs to inquire whether Mrs. Schaaf had a certificate of title when the mortgage was offered to them is such negligence that the rule heretofore noted in this opinion that "where a mortgagee knows the mortgagor is a dealer, buying to sell in the regular course of business, and consents to a sale by the mortgagor, the purchaser takes free from the mortgagee's lien" should apply. Had the plaintiffs made inquiry they would have ascertained that no certificate of title had passed and would have learned that the sale to Mrs. Schaaf was not in good faith. This was the real reason for the holding of the court in *Guaranty Discount Corp. v. Bowers*, supra.

We have concluded, therefore, that the title of the defendant Pagenkopf is superior to the rights of the plaintiffs, both on account of broad grounds of public policy and because the plaintiffs failed to require Mrs. Schaaf to comply with the certificate of title law.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.