No. 36,254

In the Matter of the Estate of Rev. Fr. Henry V. Baumstimler, Deceased (MARY GOETZ, *Appellee,* v. HARLEY BLAND, *Appellant*).

(153 P. 2d 927)

Opinion filed December 9, 1944.

*D. A. Hindman,* of Stockton, argued the cause for the appellant.

*W. McCaslin,* of Stockton, argued the cause, and *Robert Osborn,* of Stockton, was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: The present appeal arises from a judgment of the district court determining ownership of an automobile. Briefly stated, the Rev. Fr. Henry V. Baumstimler, a Catholic priest, purchased an automobile in February, 1939. The appellee, Mary Goetz, contended that he gave her the automobile at that time. The priest died in March, 1943, leaving a will which was duly admitted to probate, under the terms of which he gave to Harley Bland, the appellant, "my automobile which I may own at the time of my death." In the inventory filed in his estate the automobile was listed as an asset, with a notation that it was in the possession of Mary Goetz, who claimed it was given to her by the decedent before his death. The executor took possession of the car, and Mary Goetz filed a pe-

tition in the probate court, setting up her claim of ownership based on a gift from the decedent. Harley Bland filed an answer and cross-petition, in effect denying there was any valid gift to Mary Goetz and alleging that under the will of the decedent the car was bequeathed to him. Under an order of which no complaint is made, the probate court certified the proceeding to the district court for trial.

At the trial each claimant introduced evidence tending to support his claim, and each tendered suggested findings of fact and conclusions of law. The matter was submitted on written briefs and after consideration the trial court made findings of fact and conclusions of law. In view of the questions submitted on this appeal, we need not set out all of these findings. Such as are here necessary are summarized or quoted as follows:

The Rev. Fr. Baumstimler died in 1943. He left a will dated May 26, 1933, in which he bequeathed to Harley Bland "my automobile which I may own at the time of my death." The petitioner, Mary Goetz, entered decedent's employ in June, 1938, and until his death was his regularly employed housekeeper.

"8. That the automobile whose ownership is in question in this case, was purchased by decedent in February of 1939; that the car was selected by Petitioner; that upon delivery of the car, the decedent handed the keys of the car to the Petitioner, who has retained possession of such keys until the present time; that other parties have driven the car at various times, but that such parties always had to procure the keys from Petitioner before using the car.

"9. That petitioner has always claimed the car from the time of its purchase, and that the decedent in speaking of the car always referred to it as 'Mary's car;' that decedent often made the statement that 'the car is Mary's, and the expense is mine.'"

Findings 10 and 11 refer to other similar statements.

"12. It has been admitted in this case, that the certificate of title to the automobile in question has always been, and now remains in the name of decedent; that no assignment thereof has been made by decedent to petitioner; that the car was always assessed in the name of decedent, and that all applications for license tags, ration books, tires and gasoline, were made by decedent in his own name.

"13. That petitioner had possession and custody of the car in question at the time of decedent's death, and that she retained possession thereof until some time during the month of June, at which time, the Executor of the Estate of said decedent, went to the garage where petitioner had stored the car for a short time, and wrongfully took possession of the car; that said car has since remained, and now remains in the possession of the Executor of decedent's estate.

"14. That there was a clear and unmistakable intention on the part of said decedent, to make a gift of the car involved in this case, to petitioner.

"15. That there was a delivery of the car involved in this case, to petitioner, by decedent, during his lifetime.

"16. That there was an acceptance of the gift of such car from decedent, by petitioner, during the lifetime of said decedent.

"17. That the decedent did not own an automobile at the time of his death."

As a matter of law the trial court concluded that Mary Goetz was the owner of the automobile in question by virtue of a gift *inter vivos* from the decedent, and it rendered judgment accordingly.

Harley Bland's motion for a new trial was denied and he appeals.

In this court appellant presents two contentions. 1. That the title, right or control that the Rev. Fr. Baumstimler kept to and over the automobile prevented a completed gift. 2. Under statute voluntary transfer of ownership of an automobile can only be made by assignment of official certificate of title.

In a preliminary way it may be observed that although appellant had requested findings of fact at variance with those made by the trial court, he filed no motion to vacate or set aside any finding made, nor is there now any contention the findings as made are not supported by the evidence. We have examined the evidence as abstracted and therefrom we conclude that the findings of fact made are supported by the evidence. The principal contention made is that the gift made to Mary Goetz was not complete for the reason the title did not pass because the certificate of title thereto was not duly transferred to her as required by the statutes pertaining to automobiles and motor vehicles.

For present purposes it may be conceded that for a gift *inter vivos* to be valid there must be an intention of the donor to transfer title to the property to the donee, a delivery by the donor to the donee, and an acceptance by the donee, and if anything remains to be done, the transaction constitutes only an executory agreement to give and title does not pass. (See 24 Am. Jur. 741.) We think it clear under the findings made that the donor intended to transfer the automobile to Mary Goetz, that he delivered it to her and that she accepted it. The question then remains whether failure to comply with certain statutory requirements relied on by appellant, and pertaining to registration and certificate of title of an automobile, left something to be done by the donor, so that it may not be said the title passed.

If any statutes pertaining to registration and certificates of title

are controlling here, it is those in effect at the time the donor purchased the automobile in February, 1939, when it is claimed he gave it to Mary Goetz. Under Laws 1929, ch. 81, § 5 (never amended or repealed and now appearing as G. S. 1935, 8-127), it is provided that before any motor vehicle is operated upon any highway, the owner shall apply for and obtain the registration thereof, and operation of an unregistered vehicle is made unlawful by Laws 1929, ch. 81, § 20. (As amended in 1937, this section now appears as G. S. 1943 Supp. 8-142.) By Laws 1937, ch. 72, certain sections of the automobile law were amended. For the first time provision was made for certificates of title to automobiles by section 5 of this act as the same was amended by Laws 1938, ch. 12, § 1 (subsequently amended, and as amended appearing as G. S. 1943 Supp. 8-135). Section 1 of Laws 1938, ch. 12, is long and is subdivided into lettered and numbered parts. Under division (b) it is provided that upon the *transfer and sale* of any vehicle by any person or dealer, the new owner shall within ten days make application for registration and it *shall be unlawful* for the owner or any other person *to operate the vehicle upon the highways* unless the vehicle has been registered. Under division (c) it is provided that no vehicle required to be registered shall be registered unless the applicant shall present satisfactory evidence of ownership and make application for an original certificate of title. Under division (1) provision is made for applications for certificates of title and for such certificates, and division (2) provides for their assignment and ends with a proviso that where ownership shall pass by operation of law or repossession upon default in performance of the terms of a lease, chattel mortgage or executory sales contract, the person owning the vehicle may, upon furnishing satisfactory proof to the county treasurer of such ownership, procure a title to the vehicle regardless of whether a certificate of title had ever been issued. Divisions (3) and (4) need not be noticed. Division (5) provides that *in case of vehicles then owned* and registered, *an application for certificate of title must be made and that it shall be unlawful for any person to operate such vehicle or transfer his title unless a certificate of title had been issued.* Appellant relies particularly upon a later part of this division, providing:

"In the event of a *sale or transfer* of ownership of a vehicle . . . for which a certificate of title has been issued, the holder of such certificate of title shall endorse on the same an assignment thereof, with warranty of title

in form printed thereon . . . and the transferor must deliver the same to the *buyer* at the time of the delivery to him of said vehicle. The *buyer* shall then present such certificate of title, assigned as aforesaid, to the commissioner . . . at the time of making application for registration of such vehicle, whereupon a new certificate of title shall be issued to the *buyer* . . . ." (Italics supplied.)

Appellant relies also on division (6) which provides that after July 1, 1937, it shall be unlawful for any person to *buy or sell* any vehicle required to be registered, unless at the time of delivery there shall pass between the parties such certificate of title with an assignment, and the *sale* of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void.

In general support of his contention that title to the automobile did not pass and that the purported gift to Mary Goetz was not completed, because there was no formal compliance with the above statutes, appellant directs our attention to *Motor Co. v. Warren,* 113 Kan. 44, 213 Pac. 810; *Morris v. Firemen's Ins. Co.,* 121 Kan. 482, 247 Pac. 852, 52 A. L. R. 696; and *Sorensen v. Pagenkopf,* 151 Kan. 913, 101 P. 2d 928. A reference to the above decisions will disclose they all dealt with *sales* of cars as distinguished from *gifts* of them.

It may be noted that while in the section of the statute quoted, the phrase "sale *or* transfer" is used, in an earlier part it is "sale *and* transfer," and that throughout the section the person to whom the car is being transferred is always referred to as the "buyer." In division (6) it is made unlawful only to "buy or sell" a vehicle without assigning the certificate of title, and it is such a transaction only that is declared to be fraudulent and void. In a negative way it may be said the statute is entirely silent on the question of a gift of a motor vehicle.

We need not enter into any extended discussion of the purposes to be served by the enactment of our statutes regulating registration of motor vehicles and subsequent transfers thereof. As has been shown, with the exception of the proviso in division (2), the particular parts of the section relied upon by the appellant concern only transfers between buyer and seller, and the only transfers declared unlawful, fraudulent and void unless a certificate of title is assigned are those between a buyer and seller. The motor vehicle in question here was purchased new from the dealer by the Rev. Fr. Baumstimler and immediately given by him to his donee, Mary Goetz.

Although many decisions may be found respecting civil rights and liabilities as affected by failure to comply with statutory provisions for registration of motor vehicles, or for certificates of title thereto, practically all of those we have examined, disregarding negligence actions, deal with situations between buyers and sellers, or rights of creditors or situations not comparable to that presented by this appeal.

Our attention has been directed to *Seely v. Carlson*, 122 Kan. 359, 251 Pac. 1077, where a wife, claimed donee from her former husband, replevined a motor vehicle taken by the sheriff under execution. At the time of that decision our statutes regulating sale of motor cars were different and there was then no provision for a certificate of title, but it was there held that those statutes do not operate where a person purchases a new car from a dealer for another person and then gives it to the person for whom it was purchased. We note also the case of *Brown's Estate*, 343 Pa. 230, 22 A. 2d 821, where a son of the decedent contended that a certain automobile had been given him by his mother in her lifetime. The administrator contended, among other things, that failure of the son to procure a certificate of title defeated his claim. Although his evidence was held insufficient for other reasons, on the point here involved the court said that his omission to obtain a certificate of title in his own name would subject him to the penalty imposed by certain statutes, but such omission would not, of itself, defeat an otherwise valid gift of the automobile to him by his mother in her lifetime.

In our opinion, the statutes relied upon by appellant are not controlling in determining whether or not a valid gift was made. We think the gift was complete at the time the car was purchased by the Rev. Fr. Baumstimler and delivered to Mary Goetz, and while failure to comply with provisions of the statute regulating motor vehicles may have rendered one or both liable for acts of omission or commission thereafter committed, such subsequent acts did not affect the validity of the gift.

It has not been made to appear the trial court erred and its judgment is affirmed.