No. 38,178

J. R. RAUH and FRANK BUSBOOM, a copartnership, doing business under the firm name and style of Finance Credit Company, *Appellants*, v. DONALD H. DUMLER and THE HOME STATE BANK, *Appellees.*

(228 P. 2d 694)

Opinion filed March 10, 1951.

*Charles Boyle,* of Russell, argued the cause and was on the briefs for the appellants.

*C. R. Holland,* of Russell, argued the cause, and *Marvin E. Thompson,* of Russell, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to replevin an automobile. Judgment was for defendant and the plaintiffs appeal.

In order to avoid confusion we shall continue to refer to J. R. Rauh and Frank Busboom, copartners doing business under the firm name and style of Finance Credit Company, as plaintiffs, and to Donald H. Dumler as the defendant. The defendant Home State Bank filed no pleadings and is not now involved. It was stipulated there should be no trial on the cross petition of the defendant, Dumler, for damages until the issue of ownership and right to possession of the automobile was finally determined. That issue of damages is, therefore, not before us.

The primary issue here is whether the trial court properly concluded the defendant who purchased the automobile from one Leroy Jones, a registered dealer in new and secondhand cars, should prevail over plaintiffs, holders of a chattel note and mortgage previously executed and delivered to them by Leroy Jones.

It appears this action arises out of the fact Leroy Jones failed to pay off plaintiffs' note and mortgage out of the proceeds of the sale of the car and became a fugitive from justice. The parties stipulated as to certain facts. The stipulation reads:

"A pre-trial conference was held on May 1, 1950, being the opening day of the regular May term of the District Court of Russell County, Kansas, by Charles O. Boyle, as attorney for plaintiffs, and C. R. Holland as attorney for the defendant Donald H. Dumler, and it was thereby stipulated that no evidence need be introduced by either of the parties to establish the facts hereinafter set forth, and such facts are admitted by the parties to be true and correct to-wit:

"1. That the plaintiffs are residents of Salina, Kansas, and that they are engaged as partners in the operation of a finance company in the making of small loans; that the principal place of doing business is Salina, Kansas, and that they have and have had, and are now maintaining and have maintained a branch office in the City of Russell, Russell County, Kansas, and that they are doing business under the firm name and style of Finance Credit Company.

"2. That on August 3, 1949, one Leroy Jones, who transacted business under the firm name and style of Russell Motor Company, did for a valuable consideration make, execute and deliver to the plaintiffs his certain promissory note in writing whereby and wherein he, the said LeRoy Jones, promised and agreed to pay to the plaintiffs the sum of $1,850.00, which was to be paid on or before September 3, 1949, and bore interest at the rate of six percent per annum. That he did, in order to secure the payment of said promissory note, make, execute and deliver to the plaintiffs his chattel mortgage covering the following described personal property and automobile, to-wit:

"One 1949 Nash 2 door sedan, bearing Serial No. K324594 and Motor No. S75320,

a true and correct copy of said promissory note being set out and attached to the plaintiff's petition and marked 'Exhibit A.'

"3. That said chattel mortgage was filed for record in the office of the Register of Deeds of Russell County, Kansas, on the 6th day of August, 1949, and was entered by the Register of Deeds upon Book 39 of Chattel Mortgages at page R, and that a copy thereof has been and is now on deposit with the Register of Deeds of said county.

"4. That thereafter and on or about the 11th day of August, 1949, the said LeRoy Jones sold and transferred said motor car to the defendant, Donald H. Dumler for the sum of $2,112.25, none of which money was paid by the said LeRoy Jones to the plaintiffs.

"5. That the plaintiffs did on or about August 26, 1949, make an oral demand for the possession of said automobile, and at such time delivered to him (defendant) a copy of said chattel mortgage and promissory note.

"6. That the said Donald H. Dumler at such time did thereafter to-wit, on or about August 27, 1949, refuse to deliver possession of said automobile to the plaintiff.

"7. That the agent of the plaintiff, Nyle Watson, lived and resided in the City of Russell, Kansas, during the entire month of August, 1949, and prior thereto, and transacted the business of the plaintiff with the said LeRoy Jones.

"8. That the said LeRoy Jones was a registered dealer under the Kansas Vehicle Laws, and was engaged in the retail sale of new and secondhand automobiles in the City of Russell, Kansas.

"9. That at the time of the execution and delivery of the promissory note and chattel mortgage, a copy of which is attached to the plaintiffs' petition and marked Exhibit A, the said LeRoy Jones delivered to their agent Nyle Watson the original bill of sale covering or upon said automobile, who have kept and retained the same in their possession since said date, and which may be introduced in evidence without further identification."

Charles Boyle represented the plaintiffs and C. R. Holland tried the action for defendant. The record further discloses the following:

"'Mr. Boyle: There is nothing in the record to show that the car was purchased as a new car from the Joe Green Motor Company. We would want evidence to show that it was a new car, if that is in dispute.

"The Court: Is that in dispute?

"Mr. Holland: No we bought it as a new car.'"

The foregoing stipulations were supplemented with oral testimony of the parties. On oral argument before this court counsel for plaintiffs frankly and commendably admitted this was actually a new car. He contended, however, under the facts of the case the sale from Jones to defendant was, in legal effect, the sale of a secondhand car. The trial court filed a memorandum opinion which, though accurately speaking probably cannot be denominated find-

ings of fact and conclusions of law, contains some facts in addition to those stipulated and reflects the fundamental basis for the court's decision. It reads:

"This case arises under an unfortunate situation where it looks as though one of the parties is bound to lose a considerable sum of money by reason of the acts of Mr. Jones. The court thinks that the statute known as the 'Certificate of Title Statute' is hardly applicable to this case. That statute has to do I think with secondhand cars or cars that have passed from the original dealer to a user of cars, and its language is hardly applicable to the case here. Section 8-129 refers to application for registration and certificate of title, and it starts out 'Application for the registration of a vehicle required to be registered hereunder shall be made by the owner thereof. . . .'

"If the court should adopt plaintiff's theory and say that Jones was the owner of this car by reason of having purchased it from the Joe Green Motor Company and was really the first owner from a registered dealer, then it would appear Mr. Jones should have acquired a certificate of title. The courts, I think, recognize that fact, and possibly by reason of the fact he did not have a certificate of title, that any mortgage or other instrument that he might base on his possession of the car would be just as void as his sale would be. I think that under the testimony of Mr. Green, it was his theory that Mr. Jones was the owner of this car, but I think we can go back of all of that to the time that Mr. Jones and Mr. Watson as representative of the Finance Credit Company of Russell called on Mr. Green at Great Bend and asked for an agency for the Nash automobiles, which Mr. Green couldn't and didn't give them, but did enter into an agreement with them whereby he would sell them their cars at cost, and the Finance Credit Company through Mr. Watson agreed to finance these cars, and it was agreed that the Joe Green Motor Company would participate in the profits to the extent of 9 percent. This was an arrangement made by the Finance Company as well as by Mr. Green. Cars were obtained from the Joe Green Nash dealer and placed on the sale lot and show room of Jones here at Russell and were sold as new cars. While this arrangement probably wouldn't constitute an agency, it was an arrangement whereby all of the parties understood that these cars obtained from the Joe Green Nash Company were to be sold as new cars, and not used. That was one of the specifications that Mr. Green made with Jones and Watson.

"I might say that Jones was selling these cars on a commission or for a percentage of the profits. Having placed these cars on the lot for sale which was known and acquiesced in by the Finance Company, the Finance Company was in no better position than Jones himself would have been to object to the passing of any title to the purchaser buying without actual notice of a lien. The recording of the mortgage given by Jones to the Finance Company was constructive notice to the purchaser, the defendant in this case, of their mortgage, but one that he was not bound to take notice of, as it was clearly the intent not only of Jones but also of the Finance Company, that this car should be resold. That was what it was put on the lot for.

"The court thinks that the case of *Sorensen v. Pagenkopf*, 151 Kan. 913 is very applicable here, as well as the case of *Emerson-Grantingham Implement*

*Company v. Faulkner,* and *Bank v. Hartman,* 89 Kan. 212, which cases hold in effect that where a mortgagee knows the mortgagor is a dealer, being able to sell in the regular course of business and consents to a sale by the mortgagor, the purchaser takes free from the mortgage lien. Also there is the case of 151 Kan. 715.

"The Court is of the opinion that the equities of this case are in favor of the defendant and against the plaintiff. Judgment will be rendered for the defendant for the possession of the automobile, if it has been taken from him.

"There is another feature of the case here. The possession of this car alone is not going to solve all difficulties in connection with this case. The Journal Entry should recite that the defendant, unless evidence of title is turned over so that he can comply with the law and get title—it should recite that the court places title in the defendant. The court will award the legal title to the defendant."

On review this court, of course, is never concerned with the precise correctness of every statement contained in a memorandum opinion such as this or, for that matter, even with the reasoning disclosed therein. Our concern is with the correctness of the decision.

Plaintiffs insist the delivery of the bill of sale from the Joe Green Nash Company to Leroy Jones and his payment for the automobile constituted an 'outright sale of the car to Jones; that Jones was obliged to obtain a certificate of title from the state; that he failed to do so and, therefore, failing to make an assignment of a certificate of title to the defendant, the latter did not obtain title. That contention, of course, pertains solely to defendant's title. What about plaintiffs' title? This is a replevin action. Generally a plaintiff in a replevin action must recover, if at all, on the strength of his own title or right of possession and not on the weakness of his adversary's title or right of possession. (46 Am. Jur., Replevin, § 23.)

If plaintiffs are correct in contending Leroy Jones, having no certificate of title, could vest no title in the defendant, what about the validity of their own claim based on the chattel mortgage? Jones exhibited no certificate of title to them. Notwithstanding his failure to exhibit such a certificate they made a loan to him and accepted a note and a mortgage on the car as security.

Furthermore plaintiffs participated in engineering this entire setup for their profit. It was they who advanced the money which made it possible for Leroy Jones to obtain the car and to offer it to the public as a new car, being sold by a registered dealer. They were the ones who insisted the car should not be driven by Jones and should be sold by him as a new car. They helped work out

the agreement whereby Jones was able to obtain the car from the Joe Green Nash Company which agreement provided that the latter would receive nine percent of the retail price of the new car. Manifestly in the face of these facts plaintiffs are not in a good position to claim this car was not sold to the defendant by a registered dealer as a new car.

On the other hand, as previously stated, if this was a secondhand car as plaintiffs contend it was after Jones received it from the Joe Green Nash Company, plaintiffs themselves accepted a mortgage thereon from a man who had no certificate of title. Also if plaintiffs' present position that this was a secondhand car in the hands of Jones is sound, then in order to protect themselves they should have demanded exhibition of a proper certificate of title from Jones. They knew Jones was able to obtain a bill of sale for this car only by reason of their own previous arrangement to finance its purchase and to take back a mortgage on it as security for their loan. Had they demanded a proper certificate of title it would have disclosed their mortgage. (G. S. 1949, 8-135.) An assignment of that certificate by Jones to the defendant would have imparted actual notice of their mortgage to the defendant. The plain fact is their entire conduct is consistent only with the view that they treated this car as a new car in the hands of Jones as a registered dealer. Plaintiffs did not demand such a certificate. They not only permitted but insisted that Jones, a registered dealer, offer the car to the public as a new car. In so doing they participated directly in throwing the defendant purchaser off guard, led him to believe he was the original purchaser of a new car from a registered dealer and that he was the first person who was required to apply for and obtain a certificate of title.

Should the defendant lose the car to the plaintiffs under such circumstances? We do not think so. This view is abundantly supported, and we think, by sound authority. (*Emerson-Brantingham Implement Co. v. Faulkner,* 119 Kan. 807, 241 Pac. 431; *Trapani v. Universal Credit Co.,* 151 Kan. 715, 100 P. 2d 735; *Sorensen v. Pagenkopf,* 151 Kan. 913, 101 P. 2d 928; *Gump Investment Co. v. Jackson,* 142 Va. 190, 128 S. E. 506; *Fogle v. General Credit,* 122 F. 2d 45, 136 A. L. R. 814, and anno. 136 A. L. R. 821. See, also, the more recent decision in *General Motors Acceptance Corp. v. Davis,* 169 Kan. 220, 218 P. 2d 181, which contains somewhat similar facts and is persuasive in principle.

We reaffirm what was said in the Sorensen case, *supra*, that a purchaser of a new car from a registered dealer under circumstances there existing, similar to those in the instant case, need not examine the records to ascertain whether there is a lien on such a car. In the Fogle case, *supra*, the following doctrine was asserted:

"A mortgagee cannot throw the buyer of mortgaged property off guard concerning protection which recording act gives to him and take advantage at the same time of what otherwise would or might have been discovered, and thus if the mortgagee clothes mortgagor with indicia of ownership, or gives him authority to sell the property, or stands by in silence and watches the mortgagor deal with it as owner, the mortgagee nullifies the effect of recording by his inconsistent representation." (Headnote 8.)

While plaintiffs cite other cases they rely primarily on the following involving automobile transactions: *Sims v. Sugg*, 165 Kan. 489, 196, P. 2d 191; *Bankers Investment Co. v. Meeker*, 166 Kan. 209, 201 P. 2d 117, and cases therein cited. Plaintiffs quite properly refer to statements therein contained relative to the plain and unambiguous language of the statute commonly referred to as the certificate of title statute, G. S. 1949, 8-135 and also to G. S. 1949, 8-142. They point out that we have said failure to comply with the certificate of title law renders the sale void. These opinions speak for themselves and we shall not again review them. A reading of those cases will disclose a dissimilar state of facts. It is sufficient to say those decisions were not intended to be controlling under the facts of this case heretofore narrated. We think the decisions previously cited herein in support of the instant decision are controlling. It simply will not do to say that a purchaser from a registered dealer of a car, treated by all the parties to the litigation as a new car, loses his car because he obtained no certificate of title from the registered dealer, who, under the law, is not a party who can obtain a certificate of title, when the mortgagees who engineered, or participated in engineering, the entire deal for their profit clearly misled the purchaser into his dilemma.

Plaintiffs also complain concerning the judgment rendered pursuant to the last paragraph of the court's memorandum opinion, heretofore quoted. They remind us Leroy Jones holds the original bill of sale, that he was not a party to this action and the court had no jurisdiction over him. They also argue the original bill of sale held by Jones and the judgment of the court granting title to the defendant will cause confusion in the records of the state vehicle commissioner. We fail to see what interest plaintiffs have in that

matter. They do not represent Leroy Jones. Plaintiffs' only concern is whether, as between them and the defendant, they are entitled to possession of the car. That question has been adjudicated against them.

The judgment is affirmed.