No. 41,252

MELVIN WHISNANT, *Appellee,* v. DON SCHMID MOTOR COMPANY, INC., *Appellant.*

(336 P. 2d 898)

Opinion filed March 7, 1959.

*Kenneth H. Hiebsch,* of Wichita, argued the cause, and *Milton Zacharias, Richard A. Render, Albert L. Kamas, Donald E. Lambdin* and *David G. Arst,* all of Wichita, were with him on the briefs for the appellant.

*Clifford H. Pugh,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action in replevin to recover possession of an automobile—or the value thereof.

A money judgment was rendered in favor of plaintiff and defendant has appealed.

The material facts, most of which were stipulated, are as follow:

Plaintiff, Melvin Whisnant, was engaged in business under the name of Whisnant Pontiac-Cadillac Co., at Colby, and was the

factory-franchised dealer for new Cadillac automobiles in that city.

Warren Atkinson was the owner and general manager of the Atkinson Pontiac-Cadillac Co., at Clay Center, and was the factory-franchised dealer for new Cadillac automobiles in that city.

Defendant, Don Schmid Motor Company, Inc., of which Schmid was president and majority stockholder, was an authorized dealer in new and used automobiles in Wichita.

The automobile involved in this action was a 1957 model Cadillac which was originally delivered to Whisnant at Colby by the Cadillac Company—that is, it was acquired by him as a new car from the factory and became a part of the stock of cars owned by him.

On January 18, 1957, the Whisnant Pontiac-Cadillac Company, by plaintiff Whisnant, issued a bill of sale for the car to Whisnant, personally. On the same date he applied to the county treasurer of Thomas county for a certificate of title to the car.

Whisnant and Atkinson, being Cadillac dealers, were acquainted and had dealt with each other in the past. Atkinson, at Clay Center, was in need of a car of the model and equipment of the Cadillac in question in order to meet his trade demands. Pursuant to telephone conversations between them, Atkinson bought the car from Whisnant for $4,871, such sum being a dealer's approximate factory cost. Whisnant told Atkinson that he had "titled" the car in his own name; that the certificate of title had not yet been received, but that he would deliver title to Atkinson upon being paid for the car and as soon as he received the certificate from the vehicle department.

On February 1, 1957, Atkinson sent one of his employees to Colby to pick up the car, at which time Atkinson's check on a Clay Center bank in the amount of $4,871 was given to Whisnant. Whisnant delivered possession of the car to Atkinson's employee, but no bill of sale, certificate of title, or any other written instrument, passed between the parties. Whisnant deposited the check on the next day.

On February 6, 1957, Atkinson sold the car for $5,500 to Schmid, the defendant, who accepted delivery at Wichita. Schmid knew that Atkinson was an authorized dealer in new Cadillacs and received from Atkinson an original bill of sale showing the car as being a new car and that there was no lien on it. Schmid paid Atkinson by check. Prior to the sale Schmid had satisfied himself there were no recorded liens against the car in Clay county, and he had no knowledge of Whisnant's prior interest in the car.

Before Schmid's check cleared, however, he learned that a finance company in Salina claimed a lien on the car by virtue of an unrecorded floor-plan loan made by it to Atkinson. Schmid arranged a settlement with the finance company and received from it a receipt and indemnity agreement. The check for $5,500 given by Schmid to Atkinson was presented and paid.

On February 8, 1957, Whisnant learned that the check for $4,871 given to him by Atkinson had been protested for nonpayment because of insufficient funds. He called Atkinson and demanded the car or the money, but Atkinson told him the car was gone and that he did not have the money. Shortly thereafter Whisnant went to Clay Center in an attempt to find the car. He was unsuccessful because, in the meantime, it had been sold by Atkinson to Schmid, although Whisnant did not learn of this until some time later. Whisnant has not been paid the purchase price of the car as agreed upon by him and Atkinson.

On February 11, 1957, Whisnant, pursuant to his application of January 18, 1957, heretofore mentioned, received from the vehicle department a certificate of title to the car. This certificate has never been assigned to anyone and remains in Whisnant's possession.

On February 15, 1957, Schmid made application (based on the bill of sale he had received from Atkinson) for a certificate of title to the car, and a few days later received the same from the vehicle department.

On March 14, 1957, Schmid sold the car to one Ross and delivered possession thereof and his certificate of title properly assigned.

On April 10, 1957, Whisnant, through his attorney, made demand upon Schmid for possession of the car, which was refused because Schmid no longer had possession of it. Prior to such demand Schmid had no actual knowledge that Whisnant claimed any interest in the car.

Thereafter Whisnant filed this action to recover possession of the car or, in lieu thereof, its value. Neither Atkinson nor Ross, who purchased from Schmid, is a party to the action.

Following a trial the court found the material facts to be substantially as heretofore related, and, in holding for plaintiff Whisnant, rendered conclusions of law as follow:

"1. The purported sale of the automobile by the plaintiff to Atkinson was void for lack of consideration. Atkinson, having acquired no title to the car,

the defendant acquired no title to the car by his purported purchase from Atkinson.

"2. Plaintiff made sale of the car to Atkinson with the understanding that title to the car was to be delivered to Atkinson when the plaintiff received the cash amount of the sale. Plaintiff did not know or anticipate that Atkinson would undertake to sell the car without first having acquired title to it.

"Plaintiff's delivery of possession of the car to Atkinson under the circumstances did not make it possible for the car to be sold and title conveyed to a member of the purchasing public.

"3. Plaintiff is entitled to judgment against defendant for the sum of $4,871, together with interest at six per cent (6%) from February 6, 1957, and costs."

Defendant Schmid has appealed, and, although he asserts thirteen specifications of error, his contentions are narrowed down to the one proposition that the doctrine of estoppel is controlling and precludes Whisnant from asserting his title or denying the superior title and right to possession of Schmid to the car.

Whisnant, on the other hand, contends the purported sale from him to Atkinson was void for lack of consideration, that Atkinson thus acquired no title, and therefore Schmid acquired none by his purported purchase from Atkinson.

After a careful consideration of the facts and all contentions made by the parties, we are of the opinion the trial court reached an erroneous conclusion in this case.

Whisnant knew that Atkinson was an authorized dealer in new Cadillacs and that Atkinson could issue an original bill of sale for a new car, and he knew that a purchaser from Atkinson could use the bill of sale to obtain a certificate of title. He further knew that Atkinson was buying the car for resale as a new car, and that any purchaser from Atkinson would deal with perfect confidence that Atkinson had authority to sell the car and to issue an original bill of sale. And, just as Whisnant could and should have expected, an innocent purchaser by the name of Schmid appeared on the scene, bought the car from Atkinson, paid full value therefor, and received an original bill of sale showing it to be a new car and free of any lien. Insofar as Whisnant is concerned, Schmid stood in the same shoes as any other person of the purchasing public and met all requirements of an innocent purchaser for value. The law does not require that the automobile purchasing public buy at their peril under the facts present in this case. It is unfortunate for Whisnant that Atkinson's check was dishonored, but, as between him (Whisnant) and Schmid, the innocent purchaser, the

law and equities are all in favor of Schmid, if for no other reason than the fact it was Whisnant who made the whole thing possible.

Some argument is made that no assignment of a certificate of title having passed from Whisnant to Atkinson, the sale from Whisnant to Atkinson was void under G. S. 1957 Supp. 8-135 (c) (6). Assuming, solely for the sake of argument, the section is applicable to the situation, had it been literally complied with there would have been no question but that title would have been in Atkinson and therefore passed on to Schmid. On the other hand, if the car had not been delivered to Atkinson because of a lack of title then Atkinson would not have had possession and could not have made the sale to Schmid. It is clear that Whisnant's difficulty arises not by reason of any action or omission of Schmid, but by reason of Whisnant's delivering possession of the car to a licensed dealer of that make and in misplacing confidence in Atkinson.

Further discussion of the matter would add nothing to this opinion. It is sufficient to say that we believe the principles announced in *Trapani v. Universal Credit Co.,* 151 Kan. 715, 100 P. 2d 735; *Rauh v. Dumler,* 170 Kan. 698, 228 P. 2d 694, and *Universal Finance Corp. v. Schmid,* 177 Kan. 414, 280 P. 2d 577, are applicable to the question presented. We have considered all contentions made by plaintiff Whisnant but find them to be either inapplicable or without merit under the facts before us which clearly estop him from asserting his title and denying that of Schmid.

The judgment is therefore reversed.